Mr. Justice Mc-LEAN
 

 delivered the opinion of the court.
 

 This case is brought here by an appeal from the decree of the Circuit. Court for the district of Mississippi.
 

 The complainants- under the will of Newit Vick, late of the state -of Mississippi, deceased, claim certain interests in .a tract of two hundred acres of land, on which the .town of Vicksburg is laid off. In the bill various proeeédings are stated as to the proof of the will, the qualification of one of the executors, named in it, the death of the executrix, and the refusal of one of the executors named to qualify ; that the executor who -qualified ,Was afterwards removed, with his consent, and Lane, the complainant, appointed administrator, with the will annexed; that acting under the will, the administrator laid off the town of Vicksburg, sold lots, and-paid the debts of the deceased; that there yet remains certain parts of the above tract undisposed of; and that his power as administrator to sell the unsold lots is questioned.
 

 The defendants are represented as being interested in the above tract, as devisees and .as purchasers^ and the complainants pray that the court would decree a partition of the lots, commons, and Levee street, to be made between them and the other devisees of Newit Vick; and that said claimants shall be put in possession, &c.; or that said property may be sold, &c., as shall best comport with the intent of the testator.
 

 , The defendants favourable to the object of the bill answered; the others demurred to the bill, which was sustained on the hearing, and the bill was dismissed, from which decree this appeal was taken.
 

 The decision of this case depends upon the construction of the will of Newit Vick.. It was proved the 25th of October, 1819,
 

 
 *472
 
 Every instrument of. writing should be .so construed as to effectuate, if practicable, tbe intention of tbe parties to it. This principle applies with peculiar force to a will. . Such an instrument is generally drawn in the last days of the testator, and very often under circumstances-unfavourable to a calm consideration of the subject-matter of it. The writer/ top, is frequently unskilful in the use -of language, and is more oí less embarrassed by the importance and solemnity of .the occasion. To expect much system or-precision of language in a writing formed under such'emergencies, would seem to be unreasonable. And it is chiefly owing to these causes that so .many-controversies ai;ise under wills., i
 

 In giving a construction to a will, all the parts of it shbuld.be .'examined and compared; and the intention of the-testator must be . ascertained, not from a part, but the. whole of the instrument. ■
 

 By the second paragraph of the- will under .consideration, the testator bequeaths to his wife one equal share of his personal property, to -be.' divided between her arid her. children. -This .would giver to his wife one-half of-his personal estate. But the succeeding paragraph qualifies this bequest so as to give to his. wife a share of the persona! property, .equal only to the amount received by each of his children. This shows a want of .precision in the language .of tbe will, and that one part of it-'may be explained.and 'qualified by another. . / .
 

 In the second paragraph,, the testator devises to his wife;-.during her natural life, “ the tract of. land at the Open Woods, on which he' then resided, or the tracts near the 'river, as she might, choose, ier, serving two hundred acres, on the upper part of thé .uppefmost'- trac.t. to be laid off in town lots, at the discretion of'his- executrix and executors.” ’ '
 

 This discretion- of his executrix ánd' executors,'- referred 'tcf. the plan of the town, and .not to the propriety .of laying it off. ' ' The testator had determined that a.town should, be established, and reserved for this purpose thcabove tract of two- hundred acres,- “ to be laid off in town lots:”. .-
 

 The testator next disposes of. his personal property to Jiis-wife and children; and he says, “ to my sons one equal part of said personal. estate as they -come, of age, together with all my lands, all:of -which, lands I wish to be appraised,, valued,-.and divided, when my son . Westley arrives at the age of twenty-oné years; the said Westley having-one part, and my Son William having the other part, of the ■ tracts unclaimed by my wife Elizabeth; and I bequeath to my sonNewit, at the death of my said wife, that tract which she may prefer to oécupy. I wish it to be distinctly understood, that that part of my estate .which .rriy son Hartwell has received, shall be valued, considered, as his, and as a part of his portion of my -estate.-3’ •
 

 By these-devises, Newit, on the death of his mother, was to have the tract selected by her for her residence. She died, it is-admitted,
 
 *473
 
 in a few minutes after the decease of the testator, so that no selection of a residence was made by her. But this is . not important as regards the intention of the testator. What lands did he devise to his sons'Westley and William? The answer is, the land unclaimed by the wife of the testator. His words are, “ Westley having one part, and my son William having the other part, of the tracts unclaimed by my wife Elizabeth.” But what tracts may be said to come under the designation of “tracts unclaimed by my wife?” The land which, under the election given to her in the will, she might have claimed ás a residence, but did not.
 

 This claim by the widow was expected to be made shortly after the decease of the testator, as by it her future residence was to be established. If she selected the river land, then the Open Woods tract was to go, under the will, to Westley and William; but if the Open Woods tract were' selected by thé widow, then they were to ■have the river land. This devise being of the land unclaimed by the widow, presupposes her right to have claimed' it' in the alternative under the will. It did not include the town tract, for that was expressly reserved by the testator from the choice of his wife. That this is the proper limitation of the devise to Westley and William, seems to be,clear of doubt.
 

 To. Hartwell was devised the tract on which he lived, and which was to be valued.
 

 These are the specific devises of his lands, by the testator, to his four sons'.. The tract of .two hundred acres reserved for the .town ' is not affected by them. Did this tract pass to his -sons under the general devise of his lands to .them, in the third paragraph of the will ? That point will be now examined. The words of the testa- .. tor aré, “ and to my sons one 'equal part of said' personal estate as they come of age,- together with all, of my lands,' all of which lands ' ■.I wish to be appraised, valued, and divided, when my son Westley ' • arrives at the age of twenty-one years.” The words “all of my lands,” unless restricted by words with which they stánd connected, or by some other part of the will, cover the entire real estate of the1 testator. But these words are restricted by the part of the sentence which follows them, and also in other parts of the will. •
 

 “ All of which lands I wish to be appraised, valued, and divided, when my son Westley arrives at the age of twenty-one years,” follow the words “ all of my lands,” and show that the tract' of two hundred acres was not intended to be included in this general devise. Such an intention was incompatible with the reservation of this tract for a town. In the second clause of the will, are the words, “ reserving two hundred acres, however, on the upper part of the uppermost trad, to be laid off in town lots.” Now the testator could not have intended, in the next clause, to direct that this tract should be valued and divided among his sons. This would •be repugnant to the authority given to his executors to lay off a
 
 *474
 
 town, and would have been an abandonment of what> appears, from the last clause in the will, to have been, with him, a favourite, object. Did he intend the tract of' two hundred acres should be valued and • divided among his sons, which he directed in another part of his will to be laid off into town lots and sold by his executors ? So great an inconsistency is not to be inferred. The general devise to his sons, “ of all his lands,” was limited to the lands which he directed .to be yalued and divided among his sons; This cannot bé' controverted,- for it is in the very words of the will,'and does 'not - depend upon inference or construction. The special =devises to each of his sons, which follow the general' devise, also¿ in. effect, limit it. These devises coven all the real property of the testator, except the town tract, and show what he meant
 
 “
 
 by all his-lands.” He intended ¿11 his lands which he subsequently and specially devised, and not the tract which,, in- the will, he had previously reserved and afterwards disposed of.
 

 In the next clause of the will the testator expresses his wish, that the aforesaid Elizabeth should keep together the whole of his property, both real and personal, (reserving the provisions before made,) for the raising, educating, and benefit of the before-mentioned children. .
 

 These exceptions refer to the share of the personal property which .each child was to receive when married, or at full age, and to’ the land appropriated for the town. ' '
 

 We have now arrived at the last clause of the will, under which clause this controversy has arisen. The testator has made provision - for his wife, by giving her a.life-estate in one of two tracts of land as she might select, and an equal share, with each child, of the personal property. To his sons, in addition to his share in the personalty, he has given to each a portion of his real.estate. He has made no disposition of the tract reserved for a town, but proceeds to do so in the following and closing paragraph of the will.
 

 “I wish iny executors furthermore-to .remember that the town lots now laid off, and hereafter to be laid off, on the aforementioned two hundred aeres of land, should be sold to pay my just debts, or other engagements, in preference to any other of my property for the use and benefit of all my heirs.’-’
 

 This clause is. construed, by the appellees, to he a charge on the two hundred acres of land for the payment of the debts of the testator only. ' And that the authority to the executors to sell lots, is limited to this object. That as the personal property bequeathed to his heirs was first liable for the debts of the deceased, the charge on this tract may well be said, in the language of the will, to be “ for the use and benefit of all his heirs.’”
 

 That there is plausibility in this-construction is admitted. . It may, at first, generally, strike the mind of the reader as reasonable and just. But a closer investigation of the structure of .'the para
 
 *475
 
 graph, and a comparison of it with other parts of the will, with the view to ascertain the intention of the testator, must, we think, lead to a different conclusion.
 

 If the object of the testator had been, as contended, merely to charge this tract with the payment of his debts, would the words, “for the use and benefit of all my heirs,” have been inserted? The sentence wás complete-without them. Théy. add. nothing to, its clearness or force. On the contrary, if the intention of the testator was to pay his debts only, by the sale of lots to be laid off, the words are surplusage. They stand in the sentence, disconnected with other parts of it, and, consequently, are without an object.
 

 The testator directed that the town lots should be sold to pay his just debts, “in preference to any other of his property.” "This released his personal property,1 which he had bequeathed to his children, from all liability on account of his Sebts. And on the hypotheses that he only intended to do this, why should the above words have been added. They were not carelessly thrown into the sentence whén it was first written.. From the Will, it appears' they were interlined. This shows deliberation, aiid the exercise of judgment. Without this interlineation, the lots were required to be sold to pay debts, in preference to other property, in language tod clear to be misunderstood by any one. It could not have been misunderstood, either by the testator or the writer of the will. But, as the paragraph was first written, it did not carry out the intention of the testator. ’ To effectuate that intent, the intérlineation was made. The words, “for the use and benefit of all my heirs,” were interlined. Does this mean nothing ?. This deliberation and judgment? Were these words added to a sentence perfectly clear, and which charged the -land 'with the payment of the debts of the testator, without any object? Were they intended .to be words of mere surplusage and without effect ? Such an inference is most unreasonable. It does violence to the words themselves, and to the circumstances under which they were introduced. No court .can disregard these words, or the manner of their introduction.
 

 The testator was not satisfied with the direction to his executors to sell lots for the payment of his debts, but he adds, “for the use and benefit of- all - my heirs.” By this he intended, that the- lots should be sold for the payment of his debts,-
 
 and
 
 “for the use .and benefit of all his heirs.” The-omission of the word
 
 and
 
 has given rise to this controversy. ' Had that word been inserted with, the others, no doubt could have existed on the subject." And its omission is reasonably accounted for, by the fact of the interlineation. On such occasions, more attention is often paid to the matter to be introduced, than to the wqrd°which connects it with the sentence. That the lots should be sold “for the use and benefit of all his h,eirs,” after the .'payment of his debts, is most reasonable; but it cannot, with the same propriety of language, be said, that the debts
 
 *476
 
 of the testator were tó be paid “for the use of all his heirs.”; The word use imports .a more direct benefit. That the phrase was used in this sense we cannot doubt.
 

 The clauses in the will preceding the one which is now under consideration have been examined, ánd no disposition is found in any of them of the town tract. - And if it be not disposed of in this last-paragraph, after the payment'of the debts, the remaining lots or their proceeds will descend- generally to the heirs of the testator as persona! property. The law-will not disinherit the heir,.bn a doubtful devise. But we think the. testator intended that the tract of two hundred acres should -be laid-out in lots and sold, “ for the use and benefit of all his heirs,” and “the payment of his debts and other engagements.”
 

 ' This construction of the*will is strengthened by its justice to all the parties interested. That the testator intended to give to his sons a much larger part of his. property than to his daughters, is evident. . He gave to'his sons an-equal share, with his daughters,'of his personal property. But did he intend to cut off his daughters from all interest in his real, estate? He could not have had the heart of a dying father to have- done so. He did not act unjustly to his daughters. They, equally with his sons, were devisees, of the proceeds of the town, lots, after the payment of-all just debts and other engagements:
 

 It is insisted that the construction of this will has been conclusively settled by -the Supreme Court of Mississippi, in the case of Vick et al.
 
 v.
 
 The Mayor and Alderman of Vicksburg, 1 How. 379.
 

 The parties .in that case were not the same .as those now before ■ this court; and that decision does not.affect the interests of the complainants here; The question before the Mississippi court, was, whether certain grounds, within- the town plat, had been dedicated to public use. The construction of the will was incidental to the main object of the suit, and of course was nqt binding on any one claiming under the' will.' With the greatest respect, it may be pro- ’ per to say, that this court do not follow the state courts in' their .construction of a will or any other instrument, as they do in the construction of statutes.
 

 Where, as in the case-of Jackson
 
 v.
 
 Chew, 12 Wheat. 167, the construction of a will had been settled by the highest courts of the state, and had long been acquiesced in as a. rule of property, this ■court Would follow it, because it had become a rule of property. The .construction of a statute by the Supreme Court of a state is followed, without reference to-the interests it may affect,-or the parties to the suit in which its construction was involved. But the mere construction of a will by'a state court does not, as the construction of a statute of the. state, constitute a. rule of decision for the -courts of the United States. In the case of Swift v. Tyson, 16 Peters, 1,
 
 *477
 
 the effect of the 34th section of the Judiciary Act of 1789, and the construction of instruments by the state courts, are considered with' greater precision than is found in some of the preceding cases on the same subject.
 

 The depree of the Circuit Court is reversed, and the cause is remanded to that court for further proceedings.
 

 Mr. Justice McKlNLEY.
 

 In this case I differ in opinion-with the majority of the court, not only on the- construction of the will, but upon a question of much greater importance, and that is, whether the construction given.to. this will by the Supreme Court of Mississippi is not binding on this, court? I wilL proceed' to the examination of these questions in the order in which I have stated them; and to bring into our view all the provisions of the will, which dispose of the real estate of the testator, I will State them in the order in which they stand in the will, unconnected'with other provisions not necessary to aid in construing those relating to the real estate.
 

 After the introductory part of the will, and providing for his fane-, ral, the testator proceeds to dispose of his'estate thus:
 

 “ Secondly, I. will spd bequeath to my beloved wife, Elizabeth Vick, one equal share of all my personal estate, as is to be divided between her and ajl my children’, as her own right, and at her own disposal during her natural life; and also for the term of her life on earth, the tract of land at the Open Woods, on which I now reside, Or the tracts near the river, as she may choose; reserving two hundred acres, however, on the upper part of the uppermost tract, to be laid off in town lots, at the discretion of my executrix and executors.
 

 “ Thirdly, I will and dispose to each of my daughters, one -equal proportion with my sons .and wife, of all my personal estate, as ■ they come of age' or marry; and to my sons one equal part of said personal estate, as they come of age, together with all of my lands; ajl of which • lands-1 wish to be appraised, valued,, and divided, when my son Westley arrives at the age of twenty-one years;, the said Westley having one part, and myjo&Wflliam. háving the other part of the tracts unclaimed by my wife, Elizabeth; and I bequeath' to my son Newit, at the death of my wife, that tract which she may pr'efér to occupy. I wish it to be distinctly understood, that that part of my estate which my son Hartwell has received, shall -be valued, considered as his, and as part of his portion of my estate:
 

 -. “Fourthly, It is, however, furthermore my wish that the aforesaid' Elizabeth should keep together the whole of my property, both réal and personal, reserving the provisions before made for the raising, educating, and benefit, of the before-mentioned children, f wish my executors, furthermore, to remember that the town lots now-laid off, and hereafter to be laid off, on the aforementioned two hun
 
 *478
 
 dred acres of land, should be sold to pay my just debts, or other engagements, in ..preference to any other of my property, for the use and benefit of all my heirs.” ‘
 

 An inquiry which lies ¿t the threshold of this investigation, is, what was the meaning and intention of the • testator in reserving the two hundred acres, of land, “to be laid off in town lots?”
 

 . Did he intend this tract, of two hundred acres, should not pass by his will, under the general description of “all.my lands?” Or did he mean simply that it should be reserved from the use of his wife, in the' event she selected the river tracts in preference to the Open Woods tract? Or did he intend, as the majority of the court have decided, that it should be reserved to be sold by his executors, for the purposes of paying his just debts and other engagements, t“ and” to increase the legacies of his .daughters? To the last construction there is a very material objection; The power of the executors to .sell the lots laid
 
 off,
 
 and to be laid off, on the two hundred acres, is not absolute, but- contingent. The testator did not direct that any of his property, real or personal, should be sold for the purpose of paying his debts, or for any other purpose. But his meaning and-intention, as manifested by the language employed, is, that if, in the administration of his estafé, it should become necessary to sell any portion of it for.the payment of his debts or other engagements, he wished his executors to remember that the town lots then laid off, and ’thereafter to be laid off, shout’d be sold “ in preference to any other of (his) property.”
 

 If the debts and other engagements could háve been satisfied without a" sale of the lots, the executors would have had no power to sell' them-for any purpose whatever; and the words “for tíje use ánd'benefit of all my heirs,” would have been inoperative for the purpose to which they have been applied; and the bounty, which if is supposed by the court .a father’s heart could ' not withhold from his daughters, would have been entirely defeated; and in that event, the interpolation of the word “ and,” which has been supplied by the.court, could not have conferred on the daughters the lots, ndr the proceeds of the sale of them. But conceding the power to sell the lots for the payment of the testator’s debts, do the words “for the use and benefit of all my heirs,” give, any authority to the executors to sell the remainder of the lots, after paying the debts, or any right to the heirs to receive the proceeds of such sale?
 

 The court seem to admit, by their reasoning,,that these words alone, give no right to the heirs to claim the proceeds, nor power to. the executors to sell the remainder of the lots, and, therefore, they havé supplied the word “ and,” to unite the power granted to sell ,fbr the payment of debts, with the words “for the use and benefit, of all my heirs,” which, they say, completes the right tó receive the proceeds. If the court have the right to alter the will, and then, give construction to it, they may make it- mean what they please.
 
 *479
 
 . But I deny the power of the court, in such a case as this, to add the word “and¡”- The rule is understood to be this: where there is a supposed mistake .or omission, all the court has to do is to see whether it is possible to reconcile that part with'the rest, and whether it is perfectly clear, upon the whole scope of the will, that the intention cannot stand with the alleged mistake or omission. Mellish
 
 v.
 
 Mel-lish, 4 Ves. 49. It appears to me these words are perfectly consistent with the other parts of the will, ancf are by no means repugnant to the main intention of the testator, but perfectly consistent therewith.
 

 His intention, as manifested by all the provisions of the will, appears to be, to divide his personal estate equally among his sons and daughters and his. wife, and to divide all his real estate, or lands, equally among his sons. That he intended each son to take an equal part of his lands, is proved by the direction to have each portion i valued. That half of the Open Woods tract was not' equal in value to the two river tracts, excluding the two hundred acres to be laid off into lots, is clearly proved by the will itself; because the testator' gives his wife her choice of the Open Woods tract, or the two tracts on the river; and whichever she selects is, at her death, to go to his youngest son, Newit, and the other to be divided between his sons Westléy and William; and he further directs that the part-which his son Hartwell had received, should be valued, considered his, and as part of his- portion of the estate. Here is a clear and un- . equivocal intention manifested to give to each son an equal portion of Ins real estate; and it is as clearly manifested that, the specific portions given are not equal. To maintain the construction given to the will by .the court, the two hundred acres are excluded from the devise of all the testator’s lands to his sons. And the question arises, and ought to have been decided, how are these portions to be equalized?' If the two hundred acres passed to the sons by the .devise, subject, to the payment of debts, then a reasonably certain contingent means was afforded for equalizing the portions, by dividing and valuing the lots not sold to pay debts, to make up deficiencies.
 

 This view’alone is sufficient to-satisfy my mind that all the lands passed to the sons by the general words, “all of my lands, -all of which lands I wish to be appraised, , and valued, and divided, when my-son Westley arrives at the age of twenty-one years.” Can the words “ for’ the use and benefit of all my heirs,” which in themselves contain no positive words of grant, control the previous, positive, and unconditional, grant of all his lands to his sons? It appears to me to be impossible to give such controlling influence to such words, upon any of the knpwn -and establisned rules of construction; and especially- when they admit of a different interpretation, by which they would stánd in perfect harmony with the other provisions of the will. ~ ,
 

 •The-accounts settled by .the executor, with the Orphans’ Court,
 
 *480
 
 and which are'part of-the record exhibited in the bill of complaint,, show that between twenty-five thousand and. thirty thousand, dolíais of the débts óf the estate were páid by the proceeds of the cotton crops; which proves that a large portion of the personal estate consisted' of slaves; Is'it not reasonable, therefore, to suppose the testator had in his mind the disadvantages that would result to all his children,’if he should leave .his slaves liable to be sold for the payment of his 'debts,', when he ordered the lots, which were unproductive, to be sold for: that purpose, “in preference to any.other of his property” which was productive ? Acting upon this view of his af-Íairs, is it at all surprising that he, should have inserted in his will, even >y.interlining, the words, “for..the.use and,benefit of all my heirs,” that being the reason which induced him to charge the debts upon . the towndots?
 

 'But putting out of view all extraneous considerations, can the construction given by the court to this part of the will be sustained upon principle ? Executors have no authority'to sell real 'estate, unless ' the power to sell, and the,purpose of the sale, are.expressed in the will. Therefore the court Cannot infer, from a power expressly -granted to sell the estate for one purpose, a’power to sell it foi> another-purpose not granted, Hill
 
 v.
 
 Cook, 1 Ves. & Beames, 175. In the .'casé under consideration, the only authority given by the will to sell thie’towii lots, was for the payment of debts; and there-the power of.the executors to sell .any portion of the estate terminated. When they had: sold as many of the lots as, were necessary to paythe debts, the remainder .fell into the general devise of all the lands of the testator to his sons; and the purposes of the testator, in relation to his real, estate, were accomplished, according to, his plain intention, ydien’all .the provisions of the will are taken together. '
 

 To reserve'the remainder of the lots front the general devise, and to give effect to the interlined, words, different from their plain meaning, in the connection in which they stand with the other provisions of the will,' the, court revive the exhausted power of sale, and.giye .capacity to all the heirs to take the proceeds of the sale of the remainder pf the lots, by inserting the conjunction “ and” between the' power to sell the lots for the payment of debts and the interlined words; -thereby changing the meaning of the whole sentence. This, certainly is not construing the will ; but it is. making a will; find giving this, portion of the testator’s estate to his daughters, which he plainly intended for, and gave to, his sons.- •
 

 .This, will was brought-in question before the High Court of Errors and Appeals of. the state of Mississippi, in the case of Vick and others
 
 n.
 
 The Mayor and Alderman of Vicksburg, 1 How. Mis. Rep. 442. The question beforerthat court was, .whether the -land in controversy, had been dedicated by Newit Vick, in his lifetime, to public puiposes, or passed to, and was veste'd in’his devisees by his will; and it is a part of the same land in controversy in the case
 
 *481
 
 before this court; the court of Mississippi having concurrent -jurisdiction-of the subject-matter with this court, decided,r.that the whole of the real estate was devised to the sons of Newit Vick, deceased ; and that his daughters were entitled to no part of the lots, nor any part-of the proceeds of the sale of them. According to the Constitution and laws of the United States and previous decisions of this court, I think this court ivas bound to follow the decision of that court upon the construction of the will.
 

 The 2d section of the 3d article of the Constitution of the United States declares, “ The judicial power shall extend to all tiases in law and equity arising under -this Constitution, the laws of the United States, and treaties made or which shall bé made under their authority; to all cases affecting ambassador,- other public ministers, and consuls; to all cases of admiralty and maritime jurisdiction; to controversies to which the United States shall be a party; to controversies between two. or more states, between citizens of different states, between citizens of the same state claiming lands under grants of. different states, and. between a' state _or the - citizens' thereof and foreign- states, citizens, or subjects.” • In these three Iqtter classes of casés, the jurisdiction of the courts of the United States is concurrent with the state .courts. In this .case it originated between citizens of different states, and is, therefore, concurrent with the courts of Mississippi. Before the jurisdiction here conferred on the courts of .the United ;States could be exercised, it was necessary then-powers and- authority should be established and defined by law-And accordingly, by the 34th section of the act of Congress of the 24th of September,- 1789, it is enacted,-. “ That the laws of the several states, except where the. Constitution, treaties, or statutes of the United.States shall otherwise require or provide, shall be regarded as rules of decision in trials-at common law in the courts of the United '.States, in cases where they apply.” The purposes for whiah jurisdiction, was given to -the . courts of the United States between citizens of.different states in ordinary matters of controversy, between citizens of the sanie ■ state claiming lands under grants from different states, and between an alien and a citizen of a state, was to give in each of-these cases, at the option of the plaintiff, a tribunal, presumed to be free from any accidental state prejudice-or partiality, for the trial of the cause.
 

 And when Congress defined the powers of the courts of. the United- States, they directed, that the laws of the several states should be regarded as the rules of decision in shits at common law, in cases where they apply. And upon these principles, with few, if any exceptions, has this, court acted from the commencement of the government down to the present term of this coprt. That they should continue so to act, is of great importance to the peace and harmony of the' people of the United States. If the state judicial
 
 *482
 
 tribunals establish a rule, governing titles to real estate, whether it arise under statute, deed, or will, and this court establishes another and a different rule, which of these two'rules shall prevail ? They do not operate like two equal powers in physics, one neutralizing the .othér; but they produce a contest for success, a struggle for victory.;'and in such a contest it may easily be' foreseen which will prevail.
 

 The state courts have unlimited jurisdiction, over all the persons, and property, real and personal,'within the limits of the state.- And as often aside courts of the United States have it in their power, by their judgments, under their limited jurisdiction, to turn out of the possession of real estate those who have been put into it by the judgment of the highest court of appellate jurisdiction of the state, -so often that possession will.be restored by the same judicial state power. To avert such a contest, arid in obedience to the act of Congress before referred to, this court have laid it down, in many cases, as a sound and necessary, rule, that they should follow the state decisions establishing rules and regulating titles to real estate. And in the following cases they have applied the rule to the construction of wills, -devising real estate. In Jackson
 
 v.
 
 Chew, 12 Wheat. 162, the principle is fully maintained. In that case the court say,
 
 “
 
 The inquiry is very much narrowed by ¡applying the rule which has uniformly governed this court, that where any principle of law; establishing a rule of real-property, has been settled in the state courts, the same rule will'be applied by this court, that would be' established by the state tribunals. This is a principle so obviously just, mid so indispensably necessary under our system of government, that it cannot be lost sight."of.” .'.The question in that case arose upon the construction of á will devising land in New York. In the cáse of Henderson and wife v. Griffin, 5 Peters, 154, the court say, “ The opinion of the court in the case of Kennedy
 
 v.
 
 Marsh was an able one; it was the judicial construction of the will of Mr. Laurens, according to their view of'the rules of the common law in that state, as a rule of property, and comes within .the principle adopted in Jackson
 
 v.
 
 Chew, 12 Wheat. 153, 167.” These cases are in strict .conformity with the 34th section of the act of the 24th September,-1789,-above' referred to.
 

 There are many other decisions of this court applicable .to this case; some of them have followed a single decision of a state .court, where it settled a rale of real property. And at the present térm of this court, in the case of Carroll
 
 v.
 
 Safford,
 
 treasurer■,
 
 &c., it was held, that -it was not material whether it -had been settled by frequent decisions, or a single case. EVom these authorities, it is plain, the jurisdiction of this court is not'wholly concurrent in this case with the Supreme Court of Mississippi ;• but in power of judgment it is subordinate to that court, and, therefore, the construction
 
 *483
 
 given:by that court to the will ought to have been the rüle of construction for this court.
 

 Mr. Chief Justice Taney concurred in the opinion of Mr. Justice McKinley.
 
 *