## NATIONAL METAL EDGE BOX CO. v. AGOSTINI.

(Circuit Court of Appeals, Second Circuit.   April 16, 1919.)

No. 104.

NEGLIGENCE ☞51—CONDITION OF PREMISES—CARE AS TO TRESPASSERS—CHILDREN.

Defendant *held* not chargeable with negligence in not maintaining a fence or barrier between a canal and a roadway alongside, both of which it owned, which rendered it liable for the death of a boy five years old, who, when playing on the roadway, as was customary and known to defendant, threw a stick upon the ice in the canal, and again into a hole in the ice, and while attempting to recover it was drowned; there being no evidence that children played on the ice with defendant's knowledge.

In Error to the District Court of the United States for the District of Vermont.

Action at law by Victor A. Agostini, administrator of Livio Franceshetti, against the National Metal Edge Box Company. Judgment for plaintiff, and defendant brings error. Reversed.

Melville P. Maurice, of Brattleboro, Vt. (Robert C. Bacon, of Brattleboro, Vt., on the brief), for plaintiff in error.

Robert E. Healy, of Bennington, Vt., for defendant in error.

Before WARD, ROGERS, and MANTON, Circuit Judges.

MANTON, Circuit Judge.  The defendant in error, in his representative capacity as administrator, brought this action under sections 2839, 2840, of the Vermont Public Statutes, to recover for pecuniary loss to the next of kin of the decedent because of his death by drowning.  It is claimed his death, on March 22, 1915, was caused through the negligence of the plaintiff in error.

Plaintiff in error owned and maintained a manufacturing plant at Readsboro, Vt.  In connection therewith, it owned and maintained an artificial open ditch or canal, which was filled with flowing water and which was made use of in its business.  It maintained a road on the westerly bank of this canal, which had been used by the public for years prior to the day in question.  There was no barrier or fence between the canal and the road.  Its plant was on the easterly side of the Deerfield river, which flows in a southerly direction.  The canal, estimated to be between 900 and 1,200 feet in length, was located somewhat east of the river, and extended in a direction parallel to the river from a dam across the river on the north, to the penstock or headworks of the water power plant of the factory on the south.  It conveyed the water impounded by the dam to the penstock or head works.  The roadway was 11 or 12 feet wide and the canal about 50 feet wide.  Both roadway and canal were controlled by the plaintiff in error.  The roadway was built in order to transport logs to the plant on sleighs and wagons.  From this roadway, logs were dumped into the canal for storage.  Defendant in error conceded the roadway was not a public highway.  There were houses between the canal and the river.  These houses were approximately parallel to the canal and the roadway on

the canal embankment. The decedent lived in the fourth house from the north end of the row of houses. The houses fronted east toward the canal. There was a public highway between the front row of houses and the canal embankment, which extended from the last house toward the south, and past the house where the decedent lived. There was a footpath from the roadway down to the seventh house in the row, which had been used habitually by the residents of these houses.

Prior to the repair to the roadway on the bank of the canal, made by the plaintiff in error, there was a fence consisting of four strands of wire between the roadway and the canal, but on the day of the accident, as stated above, there was no barrier or fence. On the day of the casualty, water was running in the canal, but there was some ice over the top, with two or three holes therein. The decedent, a boy five years of age, was playing a game with a stick sharpened at one end and called a "nipsie." While located on the side of the roadway furthest from the canal, he threw his nipsie out on the ice on the canal; he then went down to the canal bank onto the ice, picked up his nipsie from the ice, and threw it into the water in a hole in the ice, and, while trying to get the "nipsie" out of the water, fell in and was drowned.

It appeared, further, that for years prior people habitually crossed the roadway down the bank of the canal, and some walked along the roadway. Children, including the decedent, frequently played in the roadway near the canal, and plaintiff in error's foreman knew of such practice. Liability is sought to be imposed upon the theory that the canal was attractive to young children, and that they had, with the knowledge of the superintendent, been habitually playing about the canal. The court submitted the issue to the jury, permitting it to find the plaintiff in error negligent in not erecting bars along the banks of its canal, so that young children living in that vicinity, and who it knew were accustomed to travel or play on the banks of the canal, would not get in and drown.

There was no evidence of an express invitation. Defendant in error relies upon an implied invitation, because the premises were an attractive place for children.

The exception to the rule of law that the landowner is not responsible for injuries except when occurring through willful fault or conduct toward persons, upon his premises, who come there without permission, is found in the so-called attractive nuisance cases. Railroad Co. v. Stout (17 Wall.) 84 U. S. 654, 21 L. Ed. 745; Union Pacific v. McDonald, 152 U. S. 262, 14 Sup. Ct. 619, 38 L. Ed. 434.

This doctrine has found approval in the federal courts and, since this action was tried in the federal court, the rule prevailing there, rather than the rule prevailing in the Vermont state court, will be adopted. The Vermont courts have refused to follow the doctrine of the "turntable" cases.

While the frequent use of the roadway by nearby residents and workers in the factory might be said to constitute an invitation for the public generally to use the roadway, still this did not constitute

a license by invitation for them to go into the water or upon the ice of the canal. The decedent, on the occasion in question, was not attracted in play to the canal. He intentionally left the roadway, seeking to recover his "nipsie," after having thrown it upon the ice. After picking it up, he threw it again into a hole in the ice, and, while trying to recover it, fell in. While there is abundant evidence indicating a frequent use of the roadway, there is no evidence that children played on the ice on the canal with or without the knowledge of the plaintiff in error. The theory of liability imposed in the so-called "turntable" cases and persons who are invitees upon private property, is that as to such persons the owners are required to keep the premises in reasonably safe condition. New York Co. v. Pusey, 211 Fed. 622, 129 C. C. A. 88. Attractiveness of the road or invitation to play thereon cannot be said to include the canal.

The decedent was not moved by temptation, if any, offered by the ice upon the canal or its attractiveness to play thereon, but by his wish to recover his "nipsie." Therefore we need not consider what effect might be given to a situation where children have played in the neighborhood or upon the canal and without objection from the plaintiff in error, or occasions when they have sometimes been ordered away. Temptation to play is not an invitation. Erie R. Co. v. Hilt, 247 U. S. 101, 38 Sup. Ct. 435, 62 L. Ed. 1003. The temptation, on this occasion, to leave his place of play, and to run out upon the ice upon the canal to recover his plaything, can in no sense be said to be either due to an invitation or a nuisance which attracted children.

We are of opinion that there was no obligation requiring plaintiff in error to fence the canal, and therefore failure so to do would not be a basis upon which to predicate negligence. We therefore think the court erred in refusing to direct a verdict as requested, to which exception was duly taken.

Judgment reversed.