## NEW YORK, N. H. & H. R. CO. v. FRUCHTER (two cases).

(Circuit Court of Appeals, Second Circuit.   February 9, 1921.)

### Nos. 152, 153

**1. Negligence ☞23(1)—Attractive "nuisance" doctrine stated.**

The word "nuisance" is inappropriate to the doctrine on which railroads are held liable for injuries to children attracted to play on railroad structures, since a nuisance is that which unlawfully works hurt, inconvenience, or damage, and the attractive device need not be unlawful; but the true doctrine is that any composition of matter which lures or attracts children to their own harm must be safeguarded as circumstances require.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Nuisance.]

**2. Courts ☞372(3)—State rule as to devices attractive to children not followed.**

The rule holding a railroad liable for maintaining unguarded device which attracts children to their injury is a rule of general law, as to which the decisions of the United States Supreme Court, and not those of the state court, are controlling on the lower federal courts.

**3. Negligence ☞136(19)—Bridge with electric wire as allurement to children held for jury.**

The question whether a bridge across a railroad track, on the top girder of which was fastened an electric wire belonging to the railroad company, was an allurement to children to play thereon, is a question for the jury, though there was no invitation by the railroad to the children.

**4. Electricity ☞19(6)—Whether absence of guards around dangerous wire was negligence held for jury.**

Where there was evidence that other boys had climbed to the top of a bridge over railroad tracks, and that the railroad company knew of it, the question whether the railroad was negligent in failing to put a guard around its electric wire on top of the bridge was a question for the jury.

**5. Electricity ☞17—Ownership of bridge by another does not relieve defendant's duty to guard wire.**

A railroad company, which maintained an electric wire across the top of a bridge spanning its tracks, is not relieved from its duty to guard the wire, for the protection of children attracted to climb on top of the bridge, by the fact that the bridge was not owned by the company, and that it was the bridge, and not the wire, that was the real attraction.

**6. Appeal and error ☞1046(5)—Remarks of judge as to activities of claim agent held not prejudicial.**

Erroneous remarks by the trial judge regarding the activities of railroad claim agents in attempting to get admissions from an injured boy are not prejudicial, where the court carefully directed the jury to dis-

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

regard his comments, and where the verdicts awarded by the jury were extremely moderate, since the only injurious effect the remarks could have had would be to aggravate the damages.

In Error to the District Court of the United States for the Southern District of New York.

Separate actions by David Fruchter, an infant, by Jennie Fruchter, his guardian ad litem, and by Sam Fruchter, against the New York, New Haven & Hartford Railroad Company. Judgment for plaintiff in each action, and defendant brings error. Affirmed.

Certiorari granted, 254 U. S. ——, 41 Sup. Ct. 449, 65 L. Ed. ——.

Defendant below (hereinafter called the Railroad Company) maintains a well-known transportation system leading out of New York City, and its lines within the city limits and further are operated by an overhead electrical system. At 149th street is a bridge or viaduct belonging to the city of New York, constructed in 1908, and crossing the sunken tracks of the Railroad Company. It is 270 feet long and 54 feet wide. This city bridge is of standard construction, and is so formed of posts, beams and girders, strengthened and connected by trellis or lattice work, that it is quite possible for active men or boys to climb to the uppermost chords of the bridge some 24 feet above the roadway.

Since 1912 the Railroad Company, with permission from the city, has carried its wires over the bridge resting on porcelain insulators which are fastened to cross-arms, which in turn are attached to an upright structure of steel, itself affixed to the top girders or chords of the bridge. This construction is also standard. On June 9, 1916, David Fruchter was a lad whose eighth birthday would occur in the following month. He lived in the general neighborhood of the bridge, which is a rather crowded region abounding with small boys. He had seen (according to his own statement) other boys playing upon these girders a few days before, and he seems to have been aware that to do likewise within sight of a policeman or railroad worker was not wholly safe. On the day mentioned he found himself unwatched, and climbed to the top girder of the bridge (as he says) to get a pigeon's nest. He then saw a pigeon on one of defendant's wires, and so climbed up the upright structure aforesaid, reached out for the pigeon, and when it flew away brought his hand in contact with the live wire, causing the personal injuries to recover for which he brought suit.

Sam Fruchter is the father of this boy, and his action rests on the same facts and is for loss of services. The cases were tried together before the same jury. The trial court charged the jury that, if the evidence persuaded them that the Railroad Company had "permitted to exist a trellis under this bridge which was capable of enticing children of immature ages, and that children of immature ages did use it and did ascend into the superstructure of this bridge, and if [the jury believed] that that was a dangerous thing and that it was not the exercise of reasonable care and caution to permit it —and if [the jury believed that the Railroad Company] knew of the use that was being made of it by children of immature ages, indiscreet children, children not capable of appreciating danger, and [the Railroad Company] permitted it, and still allowed it, and did not adopt what ordinarily reasonable and prudent persons would adopt to prevent it, and that as a consequence of that negligence, if it was negligence," the plaintiff received his injuries, he and his father were both entitled to verdicts.

There was evidence that for a long time before this accident boys had been in the habit of climbing to the top of the bridge, that they had been ordered away by policemen and workmen because of the danger not only of climbing to such a height, but of the known danger arising from the Railroad Company's wires on top of the bridge structure.

Over motions duly made to dismiss or direct, the Court thus submitted the matter to the jury. Both plaintiffs had verdicts and the Railroad Company took these writs.

John M. Gibbons, of New York City (James W. Carpenter, of New Haven, Conn., F. J. Rock, of New York City, and H. M. French, of New Haven, Conn., of counsel), for plaintiff in error.

Leon Sanders, of New York City (Harold R. Medina, George M. Curtis, Jr., and Jacob Zelenko, all of New York City, of counsel), for defendants in error.

Before WARD, HOUGH, and MANTON, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). It is too obvious to need comment that the court below treated the claim in suit as covered by what are known as the "attractive nuisance," "lure," or "trap" cases.

[1] Since, so far as the courts of the United States are concerned, these cases are all assumed to rest on Railroad Co. v. Stout, 17 Wall. 657, 21 L. Ed. 745, the word "nuisance" is inappropriate. A nuisance is that which "unlawfully worketh hurt, inconvenience, or damage," and neither the turntable of the Stout Case nor the electric wire here to be considered was a nuisance; both were lawful enough. But many a lawful thing may be so negligently managed, handled, or maintained as to give rise to causes of action in tort. The true doctrine is that any composition of matter which lures or attracts the confiding ignorance of childhood to its own harm must be safeguarded as circumstances require, and of course the circumstances vary in almost every instance.

[2] We are first seriously requested to abandon the doctrine of the Stout Case, because it is said to have been rejected by the courts of the state of New York. The request is a large one, considering how fully, after elaborate investigation, the ruling was restated in Union Pacific, etc., Co. v. McDonald, 152 U. S. 262, 279, 14 Sup. Ct. 619, 38 L. Ed. 434, and our own acknowledgment of its binding effect recently made in Heller v. New York, etc., Co., 265 Fed. 192.

But if we wished to depart from the doctrine in question we could not, for the matter is one of general law, and we are bound (in the absence of any statutory change by competent authority) by the decisions of the Supreme Court as reviewed at some length in Baltimore & Ohio R. R. Co. v. Baugh, 149 U. S. 368, 13 Sup. Ct. 914, 37 L. Ed. 772, and very recently restated by Justice Pitney, dissenting, in Southern Pacific v. Jensen, 244 U. S. 249, 37 Sup. Ct. 524, 61 L. Ed. 1086, L. R. A. 1918C, 451, Ann. Cas. 1917E, 900, the dissent not dealing with this proposition.

[3] It is further asserted that the "lure" cases have no application because "there is nothing alluring about a wire maintained at such a height." The essence of allurement is temptation, and the difference between invitation and temptation is acutely intimated in Erie R. Co. v. Hilt, 247 U. S. 101, 38 Sup. Ct. 435, 62 L. Ed. 1003. Where, for physical convenience or business advantage, men incline to take a pathway across a railway track or the like in order to reach a business place of the owner of the dangerous region traversed, an invitation may be inferred which takes away the sting of trespass. This is no such case.

The question here was whether the bridge, with its apparatus of wires on top, was or was not a temptation to children; that was a question of fact as to which there was evidence from which the jury might find that it had proved such a temptation for a long time.

[4] That it was dangerous was too obvious for argument, and therefore if the danger was known, and the temptation to children also known, and known to the defendant, it was a question for the jury to declare whether the absence of guards either human or mechanical did not constitute negligence. This is the substance of our ruling in the Heller Case, supra, where, as may be noted, the verdict of the jury had negatived negligence.

Whether a jury issue is presented in any given case depends upon a multitude of circumstances; we said in the Heller Case that the plaintiff's "extraordinary act was not one that defendant could be expected to have foreseen and which it could have anticipated." 265 Fed. 199. Considering the evidence in this case we conclude that there was evidence from which the defendant could have foreseen that some boy would in a spirit of bravado do exactly what this boy did, and under the Stout Case just such troublesome boys are entitled to be protected against themselves.

[5] It is noted that the defendant's structure was lawfully placed on top of the city bridge, and that probably the prime temptation for a boy was clambering up the bridge, which did not belong to defendant. But it was perfectly possible to physically protect the wire which did belong to defendant, while leaving the protection of the bridge to its own proprietor. This difference in ownership does not make any difference in the law. Electric, etc., Co. v. Healy, 65 Kan. 798, 70 Pac. 884.

Plaintiff in error complains of certain remarks of the trial court as unduly prejudicing the presentation of its case to the jury. The language complained of is of two kinds—(1) unfavorable comments upon the prolixity of counsel; and (2) statements exhibiting repugnance to the attempts of employees of defendant below to procure a statement regarding the particulars of the accident from the infant plaintiff while he was still in the hospital. Consideration of the record herein leads to the holding that as to the first branch of the court's remarks the judge was entirely within the rights of any trial court, and that the comments were more than justified.

[6] The second series of remarks was calculated to induce belief that defendant's agents were unfairly attempting to secure damaging admissions from so small a boy. They constitute error; but, having regard to the very careful direction of the colloquial charge that the jury should disregard all comments of his own, and to the extreme moderation of the verdicts awarded by the jury, we are unable to perceive that the error was harmful, for the only injurious effect that could have resulted was possibly to aggravate damages through sympathy. Nothing that was said tended to bolster up the plaintiff's cause of action; but the verdicts show that there was no aggravation. Consequently the error was harmless. Austro-American, etc., Co. v. Thomas, 248 Fed. 234, 160 C. C. A. 309, L. R. A. 1918D, 873.

The judgments are affirmed, with costs.