## COLE v. PENNSYLVANIA R. CO.
### No. 202.

Circuit Court of Appeals, Second Circuit.

Aug. 4, 1930.

954

Mortimer L. Sullivan, of Elmira, N. Y., for appellant.

Alexander S. Diven, of Elmira, N. Y., for appellee.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge. This case was tried before Judge Hazel without a jury. The cause of action asserted was to recover damages for the destruction of the plaintiff's property by a fire caused through the negligent acts of the defendant railroad company in the operation of its engines and the maintenance of its right of way. The trial judge found that the railroad negligently ."maintained dry grass, weeds and debris and other combustible material on its right of way. * * * That * * * a train of the defendant *ʼ* * * negligently ignited the * * * dry grass, weeds, debris and other combustible material on the right of way. * * * That at the time that said fire was so ignited, the wind blew severely from the west. That the fire spread over the abutting land of one Bentley to the lands of one Gustin and then upon the premises of plaintiff, located about 2,000 feet from the railroad track of the defendant; * * * destroying buildings, farm tools, live stock and a timber lot owned by the plaintiff."

The court found that the plaintiff had suffered damages in the amount of $4,335.50, but directed judgment for the defendant on the ground: "That because the land of Harry J. Cole, the plaintiff herein, was not adjacent to and did not abut on the right of way of the railroad, defendant herein, the plaintiff being the third owner whose property was damaged by said fire that the origination of said fire in dry grass, weeds and debris on the right of way of the defendant was not the proximate cause of the damage to plaintiff's property."

The New York rule as to the right of injured persons to recover in cases like the present is set forth in Hoffman v. King, 160 N. Y. 618, 55 N. E. 401, 403, 46 L. R. A. 672, 73 Am. St. Rep. 715; Dougherty v. King, 165 N. Y. 657, 59 N. E. 1121; Davies

v. D., L. & W. R. R. Co., 215 N. Y. 183, 109 N. E. 95; Bird v. St. Paul F. & M. Ins. Co., 224 N. Y. 47, 120 N. E. 86, 13 A. L. R. 875; Rose v. Penn. R. R. Co., 236 N. Y. 568, 142 N. E. 287; Moore v. Van Beuren, 240 N. Y. 673, 148 N. E. 753; and Moch Co. v. Rensselaer Water Co., 247 N. Y. 160, 159 N. E. 896, 62 A. L. R. 1199. It is settled by these decisions that Hoffman v. King, supra, represents the law of the state of New York. In that case the New York Court of Appeals held that a railroad company which has negligently set a fire in inflammable material on its right of way is not liable to the owner of lands not abutting on its premises for damages caused by fire communicated through the abutting and intervening woodlands of a third person. Judge Haight, who wrote for the majority of the court, said:

"If a person lights a fire upon his own premises, upon which he has maintained inflammable material extending to his neighbor's lands and the fire, fed by this material, spreads upon abutting lands, the damage is the proximate result of the act, and a liability exists; and this, we think, is the limit. It is contended that liability ought not to be thus limited; that a fire once set may run across the lines of an abutting owner and upon lands of other proprietors, causing damage. It must be conceded that such a result often happens. It did in the case we have under consideration. But where is the line to be drawn? Shall it be 1 mile, 2 miles, or 10 miles distant from the place of the original starting of the fire? * * *

"While we appreciate the force of the argument in favor of extending the rule of liability, and recognize the fact that a limitation of the rule will deprive many persons of a right of action for damages, we are convinced that the old rule is wiser and more just, and that we ought not to depart from it. * * *"

It is said that the New York authorities should not control for two reasons. The first is that the Supreme Court has laid down the rule that the test of liability for fire damage to remote property is whether there was "an unbroken connection between the wrongful act and the injury." Milwaukee, etc. Railway Co. v. Kellogg, 94 U. S. at page 475, 24 L. Ed. 256. But in the foregoing decision the facts presented in the case at bar were not exactly paralleled, for there the damage sought to be recovered was by an owner of land abutting on the property of the defendant. In New York the same rule would be applied, and the defendant would have been held liable. Davies v. D., L. & W. R.

R. Co., 215 N. Y. 181, 109 N. E. 95. While the New York doctrine, so far as it was set forth in the old case of Ryan v. New York Central R. R. Co., 35 N. Y. 210, 91 Am. Dec. 49, was criticised, the remarks of the court strictly related to the claim that the defendant was exempt from liability because the damage to plaintiff's property was not caused by sparks coming directly from the defendant's steamboat, but originating there and spreading to defendant's grain elevator and thence to plaintiff's lumber and mill. In other words, the fire did not, as here, pass across the property of intervening land-owners, but went directly from defendant's grain elevator to plaintiff's mill. In Ætna Insurance Co. v. Boon, 95 U. S. 117, 24 L. Ed. 395, and Louisiana Mut. Insurance Co. v. Tweed, 74 U. S. 44, 19 L. Ed. 65, the construction of policies of insurance was involved. No question was raised in either case as to whether the damage was too remote because of intervening property owners.

The second contention is that the general rule both in this country and England imposes upon a person who negligently sets a fire liability for any consequences that naturally follow and might have been foreseen and expected even though the fire passes across the land of numerous intervening owners before causing damage to the plaintiff. Smith v. London & S. W. Ry. Co., L. R. 5 C. P. 14; Small v. C., R. I. & P. R. Co., 55 Iowa, 582, 8 N. W. 437; Atch., T. & S. F. R. Co. v. Stanford, 12 Kan. 354, 15 Am. Dec. 362; Atch., T. & S. F. R. Co. v. Bales, 16 Kan. 252; P., W. & B. R. R. Co. v. Constable, 39 Md. 149; Fent v. T., P. & W. Ry. Co., 59 Ill. 349, 14 Am. Rep. 13; Hart v. Western R. R. Co., 54 Mass. (13 Metc.) 99, 46 Am. Dec. 719; Perley v. Eastern R. R. Co., 98 Mass. 418, 96 Am. Dec. 645; Poeppers v. M., K. & T. Ry. Co., 67 Mo. 715, 29 Am. Rep. 518; D., L. & W. R. R. Co. v. Salmon, 39 N. J. Law, 299, 23 Am. Rep. 214; P. R. R. Co. v. Hope, 80 Pa. 373, 21 Am. Rep. 100.

The second contention seems to be borne out by the above decisions and also by much of the reasoning and language of Justice Strong in Milwaukee, etc., Railway Co. v. Kellogg, supra, though this last case, as we have already said, involved different facts from those before us.

Both the logic of the situation and the overwhelming weight of authority without doubt support the plaintiff's position. But the settled rule of the New York state courts is against him.

The question, therefore, arises whether or not we are bound to apply the law of the New York courts rather than the rule generally obtaining in common-law jurisdictions. The only cases almost identical in principle with the present, where the question whether to follow the state law has arisen, are the turntable and the so-called attractive nuisance cases. Prof. Hudson, in an article in the Harvard Law Review, vol. 36, at page 827, has said that "the federal courts do not seem to feel it necessary to follow the State Courts in applying the turn table doctrine."

In New York, N. H. & H. R. Co. v. Fruchter (C. C. A.) 271 F. 419, 421, a small boy climbed on top of a railroad bridge to reach a pigeon's nest, and was injured by an unguarded electric wire. It was contended that under the New York decisions there could be no liability but Judge Hough, speaking for this court, said that the decision of the Supreme Court in Sioux City & P. R. Co. v. Stout, 17 Wall. 657, 21 L. Ed. 745, was controlling and added:

"But if we wished to depart from the doctrine in question we could not, for the matter is one of general law, and we are bound (in the absence of any statutory change by competent authority) by the decisions of the Supreme Court as reviewed at some length in Baltimore & Ohio R. R. Co. v. Baugh, 149 U. S. 368, 13 S. Ct. 914, 37 L. Ed. 772, and very recently restated by Justice Pitney, dissenting, in Southern Pacific v. Jensen, 244 U. S. 249, 37 S. Ct. 524, 61 L. Ed. 1086, L. R. A. 1918C, 451, Ann. Cas. 1917E, 900, the dissent not dealing with this proposition."

It is true that New York, N. H. & H. R. Co. v. Fruchter, supra, was reversed in the Supreme Court (260 U. S. 141, 43 S. Ct. 38, 67 L. Ed. 173) but not because the New York law applied, but on the same ground taken in United Zinc Co. v. Britt, 258 U. S. 268, 42 S. Ct. 299, 66 L. Ed. 615, 36 A. L. R. 28, that the doctrine laid down in Railroad Co. v. Stout, 17 Wall. 657, 21 L. Ed. 745, and Union Pacific Ry. Co. v. McDonald, 152 U. S. 262, 14 S. Ct. 619, 38 L. Ed. 434, did not cover the facts presented.

In National Metal Edge Box Co. v. Agostini, 258 F. 109, 110, this court again followed the Stout Case in an appeal coming up from the District of Vermont, saying, per Manton, J.:

"This doctrine has found approval in the federal courts and, since this action was tried in the federal court, the rule prevailing there, rather than the rule prevailing in the Ver-

mont state court, will be adopted. The Vermont courts have refused to follow the doctrine of the 'turntable' cases."

See, also, Snare & Triest v. Friedman (C. C. A.) 169 F. 1, 40 L. R. A. (N. S.) 367; Escanaba Mfg. Co. v. O'Donnell (C. C. A.) 212 F. 648; Cheske v. Delaware & Hudson Co. (C. C. A.) 218 F. 804; Public Service Ry. Co. v. Wursthorn (C. C. A.) 278 F. 408.

But there have been other decisions, where the rights of owners of real property have been affected, that have been treated by the Supreme Court as involving matters of general jurisprudence, rather than as determining the law of real estate. In B. & W. Taxi Co. v. B. & Y. Taxi Co., 276 U. S. 518, 48 S. Ct. 404, 410, 72 L. Ed. 681, 57 A. L. R. 426, a Kentucky railroad corporation made a contract with the plaintiff, whereby it granted to the latter for a consideration the exclusive privilege of going upon its trains, into its depot, and on its surrounding premises to solicit transportation of baggage and passengers, and assigned a plot of ground belonging to it for the use of plaintiff's taxicabs while awaiting the arrival of trains. The Court of Appeals of Kentucky had held contracts of such a character invalid because the grant of such privileges prevented competition and made such discrimination as was unreasonable and detrimental to the public. A majority of the Supreme Court refused to follow the decisions of the Kentucky state court on the ground that the contract in question, under sound principles as enunciated by various courts in this country and England, was valid. There was a strong dissent, however, by Holmes, J., in which Brandeis and Stone, JJ., concurred. The minority wished to follow the Kentucky authorities because "a settled line of state decisions was conclusive to establish a rule of property or the public policy of the State," and because "what arrangements could or could not be made for the use of a piece of land was a purely local question, on which, if on anything, the State should have its own way and the State Courts should be taken to declare what the State wills."

The prevailing opinion in B. & W. Taxi Co. v. B. & Y. Taxi Co., supra, states that, in the absence of a local statute, it has been held that the federal courts are free to exercise their independent judgment as to the law applicable to commercial paper, to the construction of insurance policies, wills, and deeds, as to what constitutes negligence and who are fellow servants, as to the liability of common carriers for injuries to passengers, as to the responsibility of railroads to

their employees for personal injuries, and as to the validity of contracts for the carriage of goods. Swift v. Tyson, 16 Pet. 1, 10 L. Ed. 865; Carpenter v. Insurance Co., 16 Pet. 495, 10 L. Ed. 1044; Lane v. Vick, 3 How. 464, 11 L. Ed. 681; Foxcroft v. Mallett, 4 How. 353, 11 L. Ed. 1008; Chicago City v. Robbins, 2 Black 418, 17 L. Ed. 298; Beutler v. Grand Trunk Ry., 224 U. S. 85, 32 S. Ct. 402, 56 L. Ed. 679 (opinion by Holmes, J.); New York C. Railroad Co. v. Lockwood, 17 Wall. 357, 21 L. Ed. 627; Baltimore & Ohio R. R. v. Baugh, 149 U. S. 368, 13 S. Ct. 914, 37 L. Ed. 772; Liverpool Steam Co. v. Phenix Ins. Co., 129 U. S. 397, 9 S. Ct. 469, 32 L. Ed. 788.

It is evident from the foregoing that the most recent decision of the Supreme Court, as well as a long line of authorities back of it, recognizes a wide field of general jurisprudence in which the federal courts decide cases according to their independent judgment. In this field actions involving the liability of railroads have undoubtedly been conspicuous. They have apparently been regarded as subjects allied to commercial law and presumptively demanding a uniform rule.

In the case at bar it may be said with some reason that the New York decisions, holding that one who negligently sets a fire on his own land which spreads to the land of another is only liable for damages to the abutting owner, are decisions declaring a local rule of real property. Yet the same thing, with as much reason, might have been said of the rights of the licensee in B. & W. Taxi Co. v. B. & Y. Taxi Co., supra. Indeed, it was the opinion of Justice Holmes and the minority that such was the case, but those views did not prevail.

■ The rule of Swift v. Tyson, supra, abounds in difficulties, and its foundations were strongly assailed in Kuhn v. Fairmount Coal Co., 215 U. S. 349, 30 S. Ct. 140, 148, 54 L. Ed. 228, as well as in the dissenting opinion in B. & W. Taxi Co. v. B. & Y. Taxi Co., supra, and elsewhere. The right of a federal court to proclaim a common law which, though ostensibly that of the state, in reality differs from the law which the state courts declare, can be of little practical advantage unless it in the long run tends to promote greater uniformity. When appeals ran from the lower federal courts to the Supreme Court as of right, that court could more frequently than now not only settle the law for all the federal courts, but also impress its views on the state courts so that

they would often in the end prevail. But with the pressure of business upon the Supreme Court, which resulted in limiting appeals as a matter of right, relatively few cases where rights under the Federal Constitution and statutes are not involved are likely to get beyond the Circuit Courts of Appeals. Consequently there is much less chance than formerly of securing or even promoting uniformity through the decisions of the Supreme Court. That there are serious objections to having the rights of litigants in the same territory depend on whether they select a federal or a state court cannot be doubted. Justice Miller, though dealing at the time with a case where the law of real property was involved, remarked that to administer a different law is "to introduce into the jurisprudence of the state \* \* \* the discordant elements of a substantial right which is protected in one set of courts and denied in the other, with no superior to decide which is right." But in spite of the difficulties that may arise from having two courts declaring a different common law in the same territory, there is a long tradition back of independent action on the part of the federal courts and it seems settled for the present that such action is precluded only in cases where the state has spoken in its statutes, or its courts have laid down some rule of real property or established some settled policy in regard to a local matter.

If we should follow Hoffman v. King, 160 N. Y. 618, 55 N. E. 401, 404, 46 L. R. A. 672, 73 Am. St. Rep. 715, in the present case, we would be adopting a rule which formally is not a rule of real property but a rule of torts. The New York Court of Appeals placed its decision in Hoffman v. King, supra, on the ground that the damage of the plaintiff "was the remote, and not the proximate, result of the defendant's fire," though the hardship of an unlimited liability seems to have been an avowed justification for the result reached. The decision is really but a particular application of the general principle enunciated by Judge Cardozo, "that, alike in contract and in tort, contiguity or remoteness in space may determine either the existence or the measure of liability."

Bird v. St. Paul F. & M. Ins. Co., 224 N. Y. at page 54, 120 N. E. 86, 88, 13 A. L. R. 875.

It is hard to see how the question whether a fire carelessly set by a railroad is the proximate cause of plaintiff's loss differs in kind from the question in Chicago City v. Robbins, 2 Black 418, 17 L. Ed. 298, which was whether an excavation made by a contractor on private land into which a pedestrian on the adjacent sidewalk fell and received injuries was a nuisance for which the landowner was liable. In the latter case the Supreme Court refused to follow the ruling of the Illinois courts in a parallel litigation and differed with the latter as to the rule of liability.

As already stated, we have ourselves held in New York, N. H. & H. R. Co. v. Fruchter, supra, and National Metal Edge Box Co. v. Agostini, supra, that the existence of a liability for maintaining an "attractive nuisance" is not a question of local law but of general jurisprudence and we have refused to follow the state decisions in such matters. The situation here does not differ, and the position taken by the Supreme Court in B. & W. Taxi Co. v. B. & Y. Taxi Co., supra, went much farther than we did in the "attractive nuisance" decisions.

The plaintiff has proved damages resulting from a fire originating on the defendant's right of way but extending in an unbroken chain to plaintiff's property. There can be no doubt that both the language and reasoning of the Supreme Court in Milwaukee & St. Paul Ry. Co. v. Kellogg, 94 U. S. 469, 24 L. Ed. 256, and Ætna Insurance Co. v. Boon, 95 U. S. 117, 24 L. Ed. 395, as well as the great weight of authority elsewhere, supports the plaintiff's claim. In the circumstances we have reached the conclusion that the liability of the defendant depends upon the general law of torts and not upon any law of real property, and that the New York courts have not established a "local" rule within the meaning of the words as used by the Supreme Court.

Judgment reversed.