FREDERIC A. POTTS. & CO., INC., Respondent, v. LAFAY-
ETTE NATIONAL BANK OF BROOKLYN, Appellant,
Impleaded with Another.

(Argued October 18, 1935; decided November 19, 1935.)

*Walter Jeffreys Carlin* for appellant. No cause of action was proven. (*Phelps* v. *People,* 72 N. Y. 334; *People* v. *Geyer,* 196 N. Y. 364; *People* v. *Barry,* 132 App. Div. 231; 196 N. Y. 507; *People* v. *Cummins,* 209 N. Y. 283; *McCormack* v. *Security Mut. Life Ins. Co.,* 220 N. Y. 447; *Brooklyn Distilling Co.* v. *Standard Distilling & Distributing Co.,* 193 N. Y. 551; *Havana C. R. R. Co.* v. *Knickerbocker T. Co.,* 198 N. Y. 422; *First Denton Nat. Bank* v. *Kenny,* 116 Md. 24; *Wheeling City Bank* v. *Bryan,* 72 W. Va. 29; *Credit Alliance Corp.* v. *Sheridan*

*Theatre Co.*, 241 N. Y. 216; *Bienenstok* v. *Ammidown*, 155 N. Y. 47; *Benedict* v. *Arnoux*, 154 N. Y. 715; *Henry* v. *Allen*, 151 N. Y. 1; *New York* v. *Tenth Nat. Bank*, 111 N. Y. 446; *McConnell* v. *Hellwig*, 190 App. Div. 244; *Gunster* v. *Scranton Co.*, 181 Penn. St. 327; *Central S. & I. Corp.* v. *Medomak Nat. Bank*, 5 Fed. Supp. 252; *Bank of Le Roy* v. *Purdy*, 100 App. Div. 64; *Merchants Nat. Bank* v. *Prescott & Son, Inc.*, 139 Misc. Rep. 603; *First Nat. Bank* v. *Tisdale*, 84 N. Y. 655; *Geneva Nat. Bank* v. *O'Brien*, 121 Misc. Rep. 282.) Plaintiff as depositor breached its duty in failing to examine its monthly bank statements and such failure and negligence resulted in the losses. (*Critten* v. *Chemical Nat. Bank*, 171 N. Y. 219; *McLaughlin, Inc.*, v. *National City Bank*, 228 App. Div. 337; *Hammerschlag Mfg. Co.* v. *Importers & Traders Nat. Bank*, 262 Fed. Rep. 266; *Morgan* v. *U. S. Mortgage & Trust Co.*, 208 N. Y. 218; *Prudential Ins. Co.* v. *National Bank of Commerce*, 227 N. Y. 510; *Leather Manufacturers Bank* v. *Morgan*, 117 U. S. 96; *Meyers* v. *Southwestern Nat. Bank*, 193 Penn. St. 1; *Union Tool Co.* v. *Farmers' & Merchants' Nat. Bank*, 192 Cal. 40; *Los Angeles Inv. Co.* v. *Home Sav. Bank*, 180 Cal. 601; *Brown* v. *Lynchburg Nat. Bank*, 109 Va. 530; *Breenhalgh* v. *Farmers' Nat. Bank*, 226 Penn. St. 184.) The monthly statements, sent by defendant to plaintiff and retained by it without objection constitute an account stated between them. (*Rodkinson* v. *Haecker*, 248 N. Y. 480; *Liquidators* v. *Upton Printing Co.*, 152 La. 270; *Hopwood Plays, Inc.*, v. *Kemper*, 263 N. Y. 380; *Holden* v. *N. Y. & Erie Bank*, 72 N. Y. 286; *T. G. & T. Co.* v. *Pam*, 232 N. Y. 441; *Davis* v. *Bemis*, 40 N. Y. 453; *Garrigues Co.* v. *International Agricultural Corp.*, 159 App. Div. 877; *Quaid* v. *Ratkowsky*, 183 App. Div. 428; 224 N. Y. 624; *Anthony* v. *American Glucose Co.*, 146 N. Y. 407.) Because of plaintiff's silence after it had knowledge of its loss, defendant's rights were prejudiced. (*Modlin* v. *Light*, 224 App. Div. 614; *Greenwood* v. *Martins Bank, Ltd.*, [1933] App. Cas. 51; *Prudential Ins. Co.* v. *National Bank of Commerce*, 227 N. Y. 510.)

*Frederick J. Moses* and *Harold A. Scheminger* for respondent. . Plaintiff's cause of action was conclusively established. (*Sims* v. *U. S. Trust Co.*, 103 N. Y. 472; *Wagner Trading Co.* v. *Battery Park Nat. Bank*, 228 N. Y. 37; *Hathaway* v. *County of Delaware*, 185 N. Y. 368; *Timpson* v. *Allen*, 149 N. Y. 513.) There was no account stated between the plaintiff and the defendant. (*Lockwood* v. *Thorne*, 18 N. Y. 285; *National Surety Co.* v. *Manhattan Co.*, 252 N. Y. 247.) The plaintiff is not estopped to maintain the action. (*Critten* v. *Chemical Nat. Bank*, 171 N. Y. 219.)

LEHMAN, J. In March, 1931, John Eckart, an employee of the plaintiff corporation, delivered, at the defendant bank, to W. Howard Wyatt, the cashier and vice-president of the bank, two checks payable to the plaintiff and indorsed by the plaintiff: " Pay to the order of Lafayette National Bank of Brooklyn in New York." The plaintiff corporation owned the checks. It had a deposit account in the defendant bank. Eckart, the plaintiff's employee who delivered the checks to Wyatt, and Wyatt, the defendant's officer who received the checks from Eckart, conspired to divert the proceeds of the checks to Eckart. Wyatt arranged for the collection of the checks in accordance with the usual business routine of the bank. Then he arranged that the proceeds should be placed in the individual deposit account of Eckart.

From time to time thereafter Eckart deposited in the defendant bank other checks payable to the order of the plaintiff and indorsed by the plaintiff: " Pay to the order of Lafayette Bank of Brooklyn in New York." The proceeds of these checks also were placed, through the instrumentality of Wyatt, in the individual deposit account of Eckart. In that manner, before March, 1932, Eckart had succeeded in diverting to his own use the proceeds of checks, aggregating over $50,000, which belonged to the plaintiff. Then the president of the plaintiff corporation discovered Eckart's dishonesty.

He gave no notice to the bank. In September, 1932, after the death of the president of the plaintiff corporation, the bank was notified of the true facts, and claim against it was made. The plaintiff has now recovered a judgment against the bank for the amount of the proceeds of its checks which were placed in the account of its dishonest employee.

The bank maintains that it is not liable for the diversion of the proceeds of the checks because its officer, Wyatt, did not receive the checks as its agent, acting in its behalf, but dishonestly and with the intent of defrauding not only the plaintiff corporation but also the bank. We may assume that Eckart, though an employee of the plaintiff corporation, was acting for himself, and not as agent of the plaintiff, when he delivered the checks at the bank with intent to appropriate the proceeds to his own use; and that Wyatt, though an officer of the defendant bank, was not acting as agent for the bank when he received the checks with intent to assist Eckart in the commission of a crime. That assumption might defeat a claim that the bank may be held responsible as principal for Wyatt's wrongdoing. The plaintiff has pleaded a different cause of action, based upon a diversion by the bank of the proceeds of the checks which it collected. If the bank received the proceeds of the checks and was under a positive duty to disburse them only upon the order of the plaintiff, violation of that duty would give rise to a cause of action in favor of the plaintiff, even though such violation may have been induced by deception practiced by a stranger or by a dishonest employee.

After Wyatt received the checks, he placed them in the proper department of the bank for collection. The employees of that department received the checks as agents for the bank; they never acted or intended to act as agents for Wyatt. The bank was then the holder of the checks, but the special indorsement upon them imported that ownership of the moneys represented by the checks was in the plaintiff corporation. The use of the defend-

ant's name as payee in the indorsement indicated the indorser's " intention to lodge the moneys in its custody and place them under its control." The language of the indorsement " making the funds payable only upon the order of the defendant imposed upon it the duty of seeing that they were not, through its agency, improperly disbursed after it had received them." (*Sims* v. *United States Trust Co.*, 103 N. Y. 472, 476.)

The defendant did unquestionably receive the checks and did unquestionably collect the proceeds. It received the proceeds with notice that they belonged to the plaintiff, and it rested, then, under the duty of seeing that they were placed in the plaintiff's deposit account. Instead of performing that duty, the employees of the defendant bank placed the moneys in the account of a thief. It cannot be questioned that in so doing they acted as agents of the bank, performing a duty to the bank. It is irrelevant that in so acting they were deceived by a dishonest officer of the bank. Though perhaps the bank may not be held responsible as principal for the acts of its dishonest officers, it gains no immunity for violation of its duty because a dishonest officer induced the violation.

If there were nothing more, the plaintiff's right to recover the proceeds of all the checks would be clear. The difficulty arises from the fact that the defendant has proven that, after the plaintiff discovered, or by the exercise of reasonable care should have discovered, that the proceeds of its checks were not credited to its account, it failed to give notice of that fact to the defendant. No system has ever been devised by which a bank or other large business can secure perfect protection against the dishonesty of a trusted employee or officer. No audit of the books of the bank, however careful, would have disclosed, in this case, that the proceeds of the checks received from the plaintiff were not placed in the proper account. The dishonest cashier had provided against that. On the other hand, an examination by the plaintiff of the monthly statement of its account with the bank

would have disclosed that the plaintiff had not received credit for checks which it had indorsed to the order of the bank. A depositor of a bank is under a duty to examine such statements of account, and to give notice of errors therein. The plaintiff, as we have said, failed to give such notice till September, 1932. If it had given notice earlier the defendant bank would not have continued to permit the diversion of the proceeds of the plaintiff's checks, and could have claimed indemnity from a surety company, which was then solvent and meeting all its obligations, for loss previously sustained.

The plaintiff seeks to excuse its failure to object to the monthly statements of its account with the bank during the period prior to March, 1932, by proof that, until that time, no one except Eckart, its dishonest employee, received the statements or knew that the statements did not show a credit for all checks which it had indorsed to the order of the bank. That proof explains the plaintiff's failure to object to the statement of its accounts, but it does not excuse such failure. The plaintiff owed to the defendant a positive duty to examine the monthly statements of its accounts. It intrusted performance of that duty to its dishonest employee, Eckart, who alone knew that he was diverting the proceeds of the plaintiff's checks received by the bank. The plaintiff cannot be charged with the knowledge which the dishonest employee had gained while he was stealing from the plaintiff, but it is chargeable, of course, with the knowledge that it had indorsed certain checks to the order of the bank, and an examination of the statements of account by an honest employee would have disclosed that these checks were not credited to its account. What was said in *Critten* v. *Chemical Nat. Bank* (171 N. Y. 219, 230), in regard to a similar situation, applies here, with change only of the name of the dishonest employee: " The plaintiff's position may be no worse because they entrusted the examination to [Eckart] instead of to a third person; but they can be no better off on that account. If they would have been

chargeable with the negligence or failure of another clerk in the verification of the accounts, they must be equally so for the default of [Eckart], so far as the examination itself would have disclosed the facts."

It is said by the plaintiff that an examination by an honest employee would not have disclosed that there was error in the statements of the account. The evidence shows that these statements purported " only to give a list of the credits and debits which have been entered on the bank's books during the month to that particular account " and it is argued by the plaintiff that the statement did show these entries accurately. The purpose of an examination of the statement of the account is not to determine whether it correctly shows the entries on the books of account of the bank. Those books are in the control of the bank, and a depositor can have no knowledge of their contents. The purpose of an examination by a depositor of a statement of his account with a bank is to verify the correctness of the debits and credits shown in the statements. Acquiescence in the account with full knowledge of the facts, makes out an account stated. (*Harley* v. *Eleventh Ward Bank*, 76 N. Y. 618.) Here there was no fraud in the preparation of the accounts by the bank. Though Wyatt knew that the account did not show the failure of the bank to credit to the account of the plaintiff the proceeds of the checks, the bank did not know that, for Wyatt's knowledge gained through his own wrong is not chargeable to the bank. On the other hand, the plaintiff did know what checks had been indorsed to the order of the bank. Any employee who examined the statements of account would have discovered that the proceeds of the checks so indorsed were not properly credited to the plaintiff. The failure to report that error made possible the diversions thereafter.

It is true that, by Wyatt's direction, the monthly statements were held at the bank until called for by Eckart, the dishonest employee. Quite possibly his purpose was to prevent the disclosure of Eckart's delinquency. Even

though that be true, yet through delivery to Eckart, the statements did come into the possession of the plaintiff, just as plaintiff's checks, through delivery to Wyatt, came into the possession of the defendant bank, and the trial court properly found that "on the first day of each month, beginning June 1, 1929, and ending March 1, 1933, pursuant * * * to the custom of banking, which custom was well known to plaintiff, there was delivered to plaintiff a full and complete monthly statement of its account," and that said statements "were duly received by plaintiff and retained by it." The plaintiff acquiesced in those statements, though it knew that it rested under a duty to examine them and that failure to object would be accepted as an admission of the correctness of the statements, at least in so far as the plaintiff had knowledge sufficient to verify the correctness of the account and was not misled by fraud.

In the cases in which a depositor in spite of failure to object to a statement of his account was permitted to recover upon proof that the statement of account was erroneous, the error was one which could not have been discovered by a depositor, even by the exercise of reasonable care (*Shipman* v. *Bank of State of New York*, 126 N. Y. 318; *National Surety Co.* v. *Manhattan Co.*, 252 N. Y. 247), or where apparent acquiescence was induced by fraud or mistake (*McIntire* v. *National Nassau Bank*, 215 N. Y. 662). Here, acquiescence was due solely to the negligence or wrong of the plaintiff's own agent, and for such negligence or wrong the plaintiff was responsible. (*Critten* v. *Chemical Nat. Bank, supra; National Surety Co.* v. *Manhattan Co., supra.*) Thus the same evidence which the plaintiff produced to impeach the account stated, establishes the plaintiff's negligence or wrong in failing to give notice of error in the account, and subjects the plaintiff to liability for damages caused thereby. Those damages are the exact amount of the diversions of the proceeds of the plaintiff's checks; for the failure to

give notice prejudiced the defendant's rights to obtain restitution or indemnity in respect to loss previously suffered, and enabled the two dishonest employees to continue their fraud.

Moreover, the plaintiff would certainly be liable for damages caused by its failure to give notice after March, 1932. Then its president, who was also its controlling stockholder, discovered Eckart's guilt. Then, undoubtedly, a duty existed to give the defendant notice of the loss sustained. It is said that in failing to give such notice the president was not acting as agent of the plaintiff, but was acting in disregard of the interests of the plaintiff corporation to protect his private interests, because he feared that if claim were made against the bank it would insist upon payment of some loans which were due by him personally to the bank. While, if that be true, the plaintiff might not be responsible as principal for a wrong of its president, it is clear that the plaintiff may not profit by the dereliction of its president. (Cf. *Critten* v. *Chemical Nat. Bank, supra.*) The president obtained knowledge of Eckart's crime, in the course of his duties as president. The plaintiff is chargeable with the knowledge so obtained. At that moment the plaintiff was under a duty to give notice to the bank. It failed to perform that duty. It would not be excused if its failure had been due to the negligence of an officer or agent. Its situation is no better because if was due to the bad faith of its agent, or the abandonment of his agency. Its fault lies in failure to act when it had a positive duty to act.

The judgment of the Appellate Division and that of the Trial Term should be reversed and the complaint dismissed, with costs in all courts. (See 269 N. Y. 613.)

CRANE, Ch. J., O'BRIEN, HUBBS, LOUGHRAN and FINCH, JJ., concur; CROUCH, J., not sitting.

Judgments reversed, etc.