MATTISON–GREENLEE SERVICE COR-
PORATION v. CULHANE.

No. 542.

District Court, N. D. Illinois, W. D.
Oct. 13, 1937.

Welsh & Welsh, of Rockford, Ill., for plaintiff.

Charles H. Linscott, of Rockford, Ill., for defendant.

## WOODWARD, District Judge.

Plaintiff, a Delaware corporation, filed its bill in equity in the circuit court of Winnebago county in June, 1936, against the defendant, a receiver of a national bank that had been duly organized under the National Banking Act (12 U.S.C.A. § 21 et seq.) to do business in the city of Rockford. The bank was duly declared insolvent in June, 1931, and the defendant was duly appointed a successor receiver of all of the assets thereof and is now acting as such. The bill seeks to establish a liability of the bank to the plaintiff as a general depositor thereof in an amount in excess of $56,000. It also prays for an accounting. The suit was removed to this court.

Throughout the period beginning in the latter part of 1926 and ending with the closing of the bank in June, 1931, one Charles W. Beach, employed by the plaintiff as a bookkeeper and clerk, succeeded in diverting such sum from the plaintiff's account with the bank. The transactions by which this was accomplished by Beach exceed 250 in number. Throughout this period Beach indorsed checks of which the plaintiff was payee or holder by placing a blank indorsement thereon with a rubber stamp afforded him for that purpose. He took these items to the bank with a deposit slip which listed them, but of which no duplicate seems ever to have been made. Beach effected the embezzzlement of plaintiff's funds by withdrawing cash from the bank at the time the deposits were made or by then obtaining a bank draft payable to his own order. Only in a very few instances did he accomplish diversion in the latter manner. The deposit slip would show by appropriate notation the amount of such withdrawal in cash or by bank draft. Neither the plaintiff's passbook nor the monthly statements submitted by the bank to the plaintiff showed the aggregate of items deposited, but only the net amount of the items or the net deposit. In other words, the plaintiff could not have discovered any withdrawals by Beach through an examination alone of its passbook or of its monthly statements. Beach had no authority whatever to make such withdrawals, such power having been vested in the officers of the plaintiff whose signature cards were on file with the bank.

Although regular monthly statements were submitted by the bank to the plaintiff the latter did not discover Beach's defalcation until March, 1936. Beach, himself, and Lydia N. Crumb, who worked in the same office with Beach under his directions, examined the monthly statements. There is also undisputed evidence that one Henry P. Lewis, an auditor and accountant not in the plaintiff's employ, made frequent and periodic checks of the plaintiff's books. Robert W. Myers, called as an expert by the plaintiff, testified that Beach so kept the books of the plaintiff that they reconciled with the bank statements. In other words, Beach so kept the books and records of the plaintiff that the difference between the income of the plaintiff and its expenditures as revealed therein equalled the balance as shown by the bank statements, subject only to certain inconsequential variations. The testimony of Myers under cross-examination by defendant's counsel

884

to the effect that there were several hundred discrepancies in the books of the plaintiff must not be understood, as defendant's counsel has insisted in the argument, as indicating that the books of the plaintiff as kept by Beach revealed such discrepancies. Upon redirect examination Myers' testimony upon this point is clear, unequivocal, and uncontradicted. It should also be borne in mind that, while the defalcations of Beach over the five-year period were large, they are not so grossly disproportionate to the income of the plaintiff as to arouse suspicion simply because they had the effect of lowering the cash position of the company below what it would otherwise have been. The volume of sales handled by the plaintiff during this period ranged from three-fourths of a million to two and three-fourths million dollars per annum. The gross income which passed through the company ranged from about a quarter to nearly a half million a year. These circumstances account for the fact that, when plaintiff filed its claim with the original receiver in November, 1931, it was for only the amount shown to be due by the bank statements, that is, about $6,000.

The answer of the defendant seeks to establish a defense to the plaintiff's larger claim upon the circumstance that it first filed for a smaller one, upon the failure of the plaintiff to assert its claim within the time fixed by the comptroller for filing claims in the receivership and by the failure of the plaintiff to challenge the correctness of the account with the bank when throughout the period of the embezzlement by Beach monthly statements were submitted to it. Upon the argument, but not in the answer, the defendant challenges the right of the plaintiff to succeed because of laches and limitation of time.

■ First. The effect of the filing of a claim for about $6,000, the amount shown by the bank statements to be due the plaintiff, when the latter did not know of Beach's embezzlements and could not be charged with notice of them, was not to invite the disastrous consequence of a total forfeiture of the claim for embezzlements. The plaintiff was not imperiled by a choice it was not free, and could not be regarded as free, to make.

■ Second. The contention of the defendant as to the effect of the failure of the plaintiff to present its claim within the time fixed for filing claims in the receivership is equally without merit. Schulenberg

v. Norton (C.C.A.) 49 F.(2d) 578, and cases cited. It has been the uniform practice in receivership cases in the federal courts to permit the filing of claims after the time fixed for their presentation has expired. The peril of delay has been to subject the claimant to loss by reason of distributions made in ignorance of his claim. What has thus transpired will not be undone at the behest of such a claimant. No reason is perceived for applying a more drastic rule here.

■ Third. The contention of the defendant raised in the argument, but not in the answer, that the plaintiff's action is really one at law and should be barred by the statute of limitations cannot be sustained. While it is true that neither the complaint nor the record presents a case for the exercise of equity jurisdiction because the plaintiff's claim rests merely in contract as a depositor of the bank, the failure of the defendant to raise the question by motion or answer has resulted in a waiver of the objection. It now comes too late. In re Metropolitan Railway Receivership (In re Reisenberg), 208 U.S. 90, 28 S. Ct. 219, 52 L.Ed. 403; Harkin v. Brundage, 276 U.S. 36, 52, 48 S.Ct. 268, 274, 72 L.Ed. 457; Pennsylvania v. Williams, 294 U.S. 176, 181, 55 S.Ct. 380, 383, 79 L.Ed. 841, 96 A.L.R. 1166. This court need act sua sponte to dismiss a case for want of equity only when there is some impelling public interest requiring it to do so. Pennsylvania v. Williams, supra, 294 U.S. 176, at page 185, 55 S.Ct. 380, 385, 79 L.Ed. 841, 96 A.L.R. 1166. This case, therefore, being in equity, is not subject to the defense of the state statute of limitations, which can be urged only in law actions in this court.

■ As a suit in equity it is subject to the defense of laches and it will be assumed that this defense has not been urged too late. However, it is uniformly held that laches involves more than a mere lapse of time and requires an element of estoppel, or neglect which has operated to the prejudice of the defendant. For two reasons the defense of laches is not available: (1) The plaintiff did not know of Beach's defalcations and could not be charged with knowledge thereof; and (2) the defendant's answer in paragraph 8 admits that "certain of its agents knew that Charles W. Beach was unlawfully and illegally withdrawing funds that belonged to the plaintiff." In the absence of a showing that these agents participated in Beach's em-

bezzlements, their knowledge is imputed to the bank. When a defendant knows of the basis of a claim he cannot successfully urge that he has relied to his detriment on the failure of the plaintiff to assert it. See National Cash Register Co. v. Remington Arms Co., 122 Misc. 234, 202 N.Y.S. 691, 699, and cases cited.

Fourth. The remaining defense is one that goes to the real merits of the case and upon the issue created thereby the determination of this case should be made to rest. The substance of the defense is that by reason of the submission by the bank to the plaintiff of regular monthly statements of its account throughout the years that Beach was diverting funds, coupled with the failure of the plaintiff to raise any objection to the correctness of such statements, when the plaintiff knew, or by the exercise of reasonable care should have known, of Beach's defalcations, the plaintiff is estopped to recover. The plaintiff in reply denies that it either knew or can be charged with knowledge of Beach's conduct.

■ Before passing to the solution of this phase of the case the law applicable thereto should be determined. Plaintiff's counsel strongly urges upon this court the adoption of the rules announced in the Illinois decisions. In support of this position the law applicable to the venue of actions to which national banks are parties, and the power of states over federal instrumentalities, is discussed. In addition, plaintiff's counsel discusses at great length decisions pertaining to the conflict of laws and when the law of one state rather than that of another should be applied. All of this is beside the point and has no bearing upon the solution of this case. The question is not as to the law of which state shall apply. The question is whether the law of any state shall apply or, conversely, whether a federal court should apply a rule of its own in a case of this kind. Specifically, the question is whether the doctrine of Swift v. Tyson (1842) 16 Pet. 1, 10 L.Ed. 865, shall be applied here. The opinion in that case was written by Mr. Justice Story and in the years since it was rendered it has been interpreted as holding that in cases originating in the federal courts, involving problems of general commercial law or general jurisprudence, the federal courts are free to announce a rule of their own independent of that announced by the courts of the state. Under the ever enlarging content

given to this rule it has been extended to the determination of the constructions of wills, Lane v. Vick, 3 How. 464, 476, 11 L. Ed. 681; to the construction of a deed, Foxcroft v. Mallett, 4 How. 353, 379, 11 L. Ed. 1008; to the field of tort liability, Cole v. Pennsylvania R. R. Co. (C.C.A.) 43 F. (2d) 953, 71 A.L.R. 1096; Howard W. Luff Co. v. Capece (C.C.A.) 61 F.(2d) 635; Texas Co. v. Brice (C.C.A.) 26 F.(2d) 164; Wabash Ry. Co. v. Walczak (C.C.A.) 49 F.(2d) 763, and cases cited with approval in Black & White Taxicab & Transfer Co. v. Brown & Yellow Taxicab & Transfer Co. (1928) 276 U.S. 518, at pages 530, 531, 48 S.Ct. 404, 407, 408, 72 L.Ed. 681, 57 A.L. R. 426. The last case is probably as extreme as any in extending the rule of Swift v. Tyson, supra, to the determination of the rights of litigants to the use of real property. In the light of these decisions alone one would be compelled to apply an independent federal rule here in the absence of an authoritative ruling to the contrary. Not only is there a total absence of contrary rulings, but there are rulings to the effect that the relation of a depositor to a bank upon the question of whether his bank purchased commercial paper or took it for collection, City of Douglas v. Federal Reserve Bank, 271 U.S. 489, 46 S.Ct. 554, 70 L.Ed. 1051; Ogdin v. Goodwin (C.C.A.) 76 F.(2d) 196, must be decided independently of state law. Finally, and what is more important, the very problem now before this court has likewise been held to be so determinable. New York Produce Exchange Bank v. Houston (C.C.A.) 169 F. 785, 787.

While it may be true, as some have thought, that the rule of Swift v. Tyson, supra, will receive substantial restriction of application to the future, there is nothing in Trainor Co. v. Ætna Casualty Co., 290 U.S. 47, 54 S.Ct. 1, 78 L.Ed. 162, and Mutual Life Ins. Co. v. Johnson, 293 U.S. 335, 55 S.Ct. 154, 79 L.Ed. 398, to suggest its nonapplication to the problems of general commercial law. It is probably true that the vigorous criticism of the rule of Swift v. Tyson, supra, voiced by Mr. Justice Holmes, and concurred in by Justices Brandeis and Stone, in his dissenting opinion in Black & White Taxicab & Transfer Co. v. Brown & Yellow Taxicab & Transfer Co., supra, marked a turning point in the history of the rule. The next century may see it gradually eaten away as slowly as it grew. Swift v. Tyson, supra, has been the

subject of adverse criticism by eminent legal scholars, but it is not necessary to go into that matter here. The remarks of Mr. Justice Cardozo, writing for a unanimous court in Mutual Life Ins. Co. v. Johnson, 293 U.S. 355, 55 S.Ct. 154, 156 79 L. Ed. 398, in which case the court followed the Virginia law upon the meaning of certain provisions in a life insurance policy, cannot be understood as making the application of a federal rule inappropriate here. In that case he said: "No question as to a rule of the law merchant is present in this case. Swift v. Tyson, 16 Pet. 1, 10 L.Ed. 865. No question is here as to any general principle of the law of contracts of insurance (Carpenter v. Providence Washington Ins. Co., 16 Pet. 495, 511, 10 L.Ed. 1044; Ætna Life Ins. Co. v. Moore, 231 U.S. 543, 559, 34 S.Ct. 186, 58 L.Ed. 356), with consequences broader than those involved in the construction of a highly specialized condition. All that is here for our decision is the meaning, the tacit implications, of a particular set of words, which as experience has shown, may yield a different answer to this reader and to that one. With choice so 'balanced with doubt,' we accept as our guide the law declared by the state where the contract had its being. Trainor Co. v. Ætna Casualty Co., 290 U.S. 47, 54, 55, 54 S.Ct. 1, 78 L.Ed. 162; Sim v. Edenborn, 242 U.S. 131, 135, 37 S.Ct. 36, 61 L.Ed. 199; Community Building Co. v. Maryland Casualty Co. (C.C.A.) 8 F.(2d) 678, 680; Fordson Coal Co. v. Kentucky River Coal Corporation (C.C.A.) 69 F.(2d) 131, 132."

The rule of the federal cases pertaining to the liability of a bank to its depositor is clear. A depositor owes his bank the duty to examine the statements of his account furnished him by the bank and report errors which he discovers or ought to discover therein without unreasonable delay. A depositor is charged with notice of what a reasonable examination would reveal. When a depositor's agent, permitted to examine the bank statements, is the same person who embezzled from the depositor's account, the federal cases do not for that reason absolve the depositor. The latter, it is true, is not charged with the knowledge which his dishonest agent has, but he is charged with knowledge of such facts as a reasonable examination by an honest agent would disclose. The federal cases also hold, and in this respect there appears to be no dissent in the American

cases, that, if a bank is negligent in detecting fraud, or where the bank fails to observe a limitation on the agent's drawing power, the depositor may recover and will not be estopped despite his own failure properly to examine the bank's statements. Leather Manufacturer's Bank v. Morgan, 117 U.S. 96, 112, 6 S.Ct. 657, 29 L.Ed. 811; First National Bank v. Farrell (D.C.) 272 F. 371; Irving Trust Co. v. National City Bank (C.C.A.) 78 F.(2d) 665.

The reason for plaintiff's counsel urging upon this court the adoption of the rule of Illinois cases is based in some measure upon the erroneous assumption that they hold a depositor to be under no duty whatever to examine his bank statements. The case of Manufacturers' National Bank v. Barnes, 65 Ill. 69, 16 Am.Rep. 576, has been referred to as supporting this proposition, but without any justification. The Barnes Case cited an early New York case of Weisser's Adm'rs v. Denison, 10 N.Y. 68, 61 Am. Dec. 731, which did announce such a rule. Later New York cases overruled it. An examination of the Barnes Case itself will show that the defendant bank was negligent and in view of such negligence it is immaterial whether the depositor examined his statements under the uniform ruling of courts. Whatever support for the proposition that a depositor is under no duty to examine his statements one may find in the Barnes Case is completely destroyed by later Illinois cases. Osborne v. Corn Exchange National Bank, 218 Ill.App. 28; Merchants' National Bank v. Nichols, etc., Co., 223 Ill. 41, 79 N.E. 38, 7 L.R.A.(N.S.) 752; Illinois Tuberculosis Ass'n v. Springfield Marine Bank, 282 Ill.App. 14; Cosmopolitan Bank v. Lake Shore Bank, 343 Ill. 347, 175 N.E. 583.

It is probably true, however, that the Illinois decisions are more favorable to a depositor in one respect. They seem to hold that a depositor has discharged his duty to the bank even in cases where the examination of bank statements is made by the same agent who diverted the funds from the bank account to which the bank statements pertain. Merchants' National Bank v. Nichols, etc., Co., 223 Ill. 41, at page 50, 79 N.E. 38, 7 L.R.A.(N.S.) 752. It is believed that in this one respect alone the Illinois cases are unique in American law. The general rule is that a depositor is charged with knowledge of such facts as a reasonable examination by an honest agent would reveal. For full collection of cases

upon the subject of the liability of a bank to its depositor when the latter's funds have been diverted, see 15 A.L.R. 159, 161; 67 A.L.R. 1121; 103 A.L.R. 1147.

 In the view which this court takes of this case the plaintiff can recover as well under the federal rule as under that taken by the Illinois courts. The relevant facts have already been stated. There is no dispute over the salient facts, but only over the inferences to be drawn from them. In the light of the facts as herein stated the plaintiff was not negligent in failing to discover Beach's embezzlements which an examination of the statements of the bank account and even the books of the plaintiff did not and would not reveal. On the bank's side the answer admits that certain employees knew that Beach was unlawfully withdrawing plaintiff's funds. In the light of such an admission liability must be imposed. Even if the record did not contain such an admission this court would be compelled to reach the same result because the record clearly establishes gross neglect upon the part of the bank in allowing Beach, who had no authority to withdraw, to withdraw any funds at all, and especially in allowing him to do it in a way that would conceal such withdrawals from his principal. The bank must be charged with the knowledge of consequences so obvious. Even if the assumption be made that plaintiff was negligent, still the bank is liable if negligence upon its part is established. Testimony offered by the defendant of an established banking practice in Rockford such as was followed here was rightly excluded if for no other reason than that no practice, however prevalent, could justify such banking methods.

The strong reliance placed by the defendant upon Potts & Co. v. Lafayette National Bank, 269 N.Y. 181, 199 N.E. 50, 103 A.L.R. 1142, justifies a further word. Assuming that the case was correctly decided, a conclusion by no means free from doubt, it can be distinguished upon three grounds: (1) Wyatt, the bank officer, actively participated with Eckart, the embezzling employee of the depositor, to divert the plaintiff's funds; (2) the court holds that an examination by an honest employee would have disclosed the diversions; and (3) the president of the plaintiff company remained silent long after he had discovered the embezzlements. It is not necessary to discuss the authorities further.

The findings of fact submitted by the plaintiff will be adopted. A decree may be entered in conformity with the views herein expressed.