**WHITE CASTLE SYSTEM, INC. v HUNTINGTON NATIONAL BANK**

Ohio Appeals, 2nd Dist.,
Franklin Co.

No. 3307. Decided March 25th, 1941.

George L. Gugle, Columbus
Clarence M. Addison, Columbus
for plaintiff-appellee.

254

James I. Boulger, Columbus, for defendant-appellant.

**OPINION**

By BARNES, J.

The above-entitled cause is now being determined as an error proceeding by reason of defendant's appeal on questions of law from the judgment of the Court of Common Pleas of Franklin County, Ohio.

Plaintiff commenced this action against the defendant on March 1, 1939. The same was attacked by motion and demurrer, as was the amended petition, resulting in the filing of a second amended petition on June 23, 1939.

Defendant's answer was attacked by motion, as was the amended answer, finally resulting in the filing of a second amended answer on April 17, 1940. In May following plaintiff filed reply.

During the trial to a court and jury, the defendant, by leave of court and over objection of plaintiff, filed an amendment to its second amended answer to conform with the evidence. At the close of defendant's evidence counsel for plaintiff interposed motion for a directed verdict, which was sustained and thereupon a verdict was returned for the plaintiff.

Motion for new trial was duly filed, overruled and judgment entered on the verdict. Through proper notice of appeal the cause was lodged with us for review.

There is very little, if any, factual dispute, but counsel are far apart on the applicable questions of law.

The plaintiff, the White Castle System, Inc., was a Kansas corporation, with extensive operations throughout the United States, one of its places of business being within the City of Columbus. Its business was very large.

On August 9, 1934, the company adopted a resolution authorizing the opening of account or accounts with The Huntington National Bank, Columbus, Ohio, and in the resolution it authorized the bank to pay or otherwise honor checks, drafts or other orders issued from time to time for debit to said account or accounts when signed by any one of the following persons: E. W. Ingram, president; A. C. Mechling, vice president and treasurer; William J. Baurle, secretary; J. E. Bryer, assistant secretary. The resolution, copy of which was filed with the bank, contained in addition to the above, the following: "Inclusive of any such in favor of any said persons and that the said account or accounts be reconciled from time to time by said persons or his or their designees."

On or about the date of the adoption of the resolution aforesaid, plaintiff opened what is designated as a general account with said defendant bank. This account was an active account, deposits and withdrawals therefrom being made very frequently.

On or about May 31, 1935. and under the authorization of the aforesaid resolution, plaintiff opened up with the defendant bank what was designated as special account, as follows: "The White Castle System Special Account, 555 W. Goodale Street".

This account was inactive and consisted entirely of transfers from the general account made by duly executed check.

Its purpose was in reality to set up a reserve for the payment of contract obligations falling due at known periods in the future. The plaintiff company furnished to the defendant bank signatures of the officers authorized to sign checks. The signature card as it related to the general account contained the names of the four officers mentioned in the resolution. As it related to the special account, the signature card contained three names, but not that of the assistant secretary, J. E. Bryer.

It was a custom of the defendant bank to place in the hands of the plaintiff at regular intervals, a statement of the status of plaintiff's account, at which time all paid and cancelled checks were to be returned. These statements, at the bottom thereof, had printed in heavy type the following: "Please examine". "If not correct, report at once."

On the general account these statements were sent out monthly: on the special account, yearly.

At the time of the opening of the general account, plaintiff had designated Emmett C. Daniels, an assistant in the accounting department, to check and reconcile the bank's statements with the books and records of the plaintiff company.

Mr. Daniels was not designated as the person to reconcile the special account with the statements of the bank. This duty was conferred upon Mr. J. E. Bryer, the assistant secretary. It was not the policy of the plaintiff company to have the bank's statements reconciled with their books by any officer or officers authorized to issue checks on the particular account.

On October 21, 1935, the assistant secretary, J. E. Bryer, presented himself at a teller's window of the defendant bank with an executed check against the account of the White Castle System, Inc., payable to the order of the White Castle System's special account, in the sum of $4000.00, and signed J. E. Bryer, secretary. The check was endorsed as follows: "For deposit to account of the White Castle System Special Account by J. E. Bryer".

He also had with him the White Castle System's special account pass book. He presented to the teller the check, pass book and a deposit slip, the latter showing that the deposit was to be made to his personal account. Mr. Bryer at that time and both before and after, had a personal account with the defendant bank. The personal account, as carried at the bank, was in the name of "J. E. Bryer or Mrs. J E. Bryer, 555 West Goodale Street, residence, 1149 West First Avenue."

The deposit of $4000.00 on October 21, 1935, placed to the personal account of the Bryers, gave them a total of $4043.03. This personal account continued in a sum in excess of $4000.00 until December 17, 1935, when it was reduced to $3990.98, and on December 31, 1935, was $3886.59. For a year the personal account was reduced slightly and was finally closed out sometime in 1938.

The claim is made, and we think correctly so, that this $4000.00 check should have been deposited to the credit of the White Castle System's special account, and not to the personal account of J. E. Bryer. The error occurred in the first instance through J. E. Bryer's making out the deposit slip for credit to his personal account, and, second, in the teller's receiving the check and not noting that the deposit slip did not conform to the endorsement on the check.

This error was not caught by the bank at the end of the day's business due to their method of passing to different bookkeepers for entry on the books of the bank.

At the end of the day the deposit slips were separated from the checks and each totaled as a reconciliation one with the other. The checks then went to one book-keeper for entry as a charge against the customer depositor, and the deposit slip to another book-keeper for entry of credit as per its contents. Thereafter there would be no occasion for the bank to examine the checks or deposit slips, unless perchance, their attention was called to some error. Generally these errors would be caught through the customer's reconciling the balances as shown by the bank's statement with the customer's books.

The statements furnished to the plaintiff on the general account were reconciled by Mr. Daniels and found to be correct.

The bank's statement as to the special account was placed in the hands of the plaintiff company on or about December 31, 1935, following the $4000.00 transaction on October 21, 1935. This statement, as shown by Exhibit D, discloses the status of this account in detail for the year. It discloses eight deposits totaled $34,044.98, with no withdrawals. Naturally, the bank's statement did not show the $4000.00 deposit on October 21, 1935. Likewise, the total as shown from the statement, would not correspond with the books of the plaintiff company, in that the latter would show a balance of $4000.00 in excess of the statement. The bank sent statements to the plaintiff company as to this special account in 1936 and 1937. In each of these bank statements the balance would be $4000.00 short, according to the books of the bank.

It is probable that the only person connected with the plaintiff company that knew of this error was the assistant secretary, J. E. Bryer. He was the person entrusted with the reconciling of this account, and no doubt was interested in concealing his own wrongdoing.

In the spring of 1938, the assistant secretary, Bryer, left the employ of the company. Defendant sought to show that he left under a cloud, probably as an embezzler and defaulter, but the trial court did not permit the introduction of this testimony. In any event, it was following his leaving the plaintiff company that other employees or officials discovered the error and presented to the bank, on January 12, 1939, a check for $4000.00 on the special account and made payable to the general account. The bank refused to pay on the ground that the books of the bank did not show a balance sufficient to take care of the check. In addition, the bank made a notation that the balance of the White Castle special account was in controversy.

As heretofore stated, suit was commenced on March 1, 1939, seeking to recover judgment for the $4000.00 item, together with interest, and also damages, making the total prayed for, $7500.00.

Plaintiff's petition set up two causes of action.

The first cause of action was on account in the short form.

The second cause of action was predicated on the same state of facts, but set out more in detail the basis of its claim.

Defendant's answer contained five separately stated defenses, which may be summarized under two headings:

1. That the bank was authorized to make the credit to the individual account of J. E. Bryer.

2. That if the bank erroneously gave the credit to Bryer personally

instead of to the White Castle special account, that the plaintiff should not recover for the claimed reason that it was guilty of negligence in failing to report the error after it ascertained the same, or in the exercise of ordinary care should have known of such error; that the plaintiff company had knowledge of the claimed error on December 31, 1935, when it received the statement from the bank showing detailed deposits, together with balances; that had they acted within a reasonable time following the statement, the bank would have corrected the error and charged the amount against the account of Bryer, which was then but slightly less than the $4000.00 claimed; that by plaintiff's delay in reporting such claimed error the bank was damaged through its inability to recover anything at the present time from Bryer.

Plaintiff's testimony consists entirely of exhibits, the identification of which was waived, and consists of Exhibits 1, 2, 3 and 4. The plaintiff called no witnesses at all.

Exhibit No. 1 is a photostatic copy of the $4000.00 check, which was credited to the account of Bryer.

Exhibit No. 2 is a photostatic copy of a page from the pass book issued by The Huntington National Bank to the White Castle System's special account, showing a deposit thereunder, under date of October 21, 1935, of $4000.00.

Exhibit No. 3 is a check, dated January 12, 1939 of $4000.00 to the White Castle System, Inc., and signed by the White Castle System's special account by A. C. Mechling, treasurer. This is the check which defendant refused to pay, and attached thereto is the notation: "Not sufficient funds. Balance of account in controversy."

Exhibit No. 4 is a blank deposit slip, which plaintiff claims is a change in form by the bank since the present controversy.

Defendant's witnesses, five in number aside from Charles H. Mylander, vice president of the defendant bank, consisted of employees and officers of the plaintiff company.

The trial statements of counsel were made a part of the record.

During the presentation of defendant's evidence, and very early therein, the trial court expressed doubt as to the efficacy of defendant's defense. Counsel for plaintiff was objecting seriously to the introduction of testimony offered by the defendants. The jury was excused and argument presented to the court pro and con, no part of which is presented in the bill of exceptions. Following this it is apparent from the colloquy between the court and counsel appearing in the record and statements made by the court, that the jury would not hear the case. Apparently there was some arrangement, possibly on the suggestion of the court, that counsel for defendant might introduce his testimony, after which the jury would be excused and the court would then determine, following the filing of briefs, as to its competency.

From this point on we are led to believe that defendant was given full latitude in making its record. At the close of defendant's testimony counsel for plaintiff interposed a motion for a directed verdict and stated that in so doing for the purposes of the argument he was admitting the competency of all testimony offered by the defendant, but reserving the right to take further testimony in the event the court should overrule the motion.

Counsel for defendant contended that this was contrary to the previous understanding, but then stated that if the court was going

to consider the motion, defendant would also interpose a motion for a directed verdict. As heretofore stated, the court thereupon directed a verdict in the sum of $4000.00, with interest.

This rather full and complete statement of what took place during the trial is essential in passing on defendant's errors, as presented under Nos. 2 and 3. In substance these claimed errors urge that the court was in error in not directing a verdict for the defendant, or, in the alternative, entering judgment for the defendant notwithstanding the verdict.

While not exactly in order, we think it appropriate to pass on these claimed errors at this time, and regardless of our holding on other errors, have no difficulty in saying as a purely procedural question, that we find no error under specifications 2 and 3. This is solely due to the fact that counsel for plaintiff did not waive his right to introduce evidence in rebuttal, but expressly reserved his right in the event the court overruled his motion.

Counsel for the respective parties have filed very full and comprehensive briefs. Over one hundred citations are presented. Within reasonable limits we could not possibly make reference to all the citations and make comment thereon. We might say, however, that we have carefully examined, practically all of the citations. The only instances in which we have not made such examination were where the authority is not available in our library.

From the reference made in counsel's briefs to citations not so available, we are able to determine from counsel's comments that they are merely cumulative or not germane to the vital question here involved. On many cases we are merely giving our conclusions. We do this due to the fact that on many questions we think the principles are so well grounded as to need no citation of authorities, although many are cited and to the point.

We find nothing in Ohio on all fours with the instant case. The law has undergone a pronounced evolution through the variance in facts. In a number of cases the courts have made very positive and pronounced statements, which under their language would be broad enough to embrace the instant case. However, a careful reading of these cases will disclose that the pronouncements were made under facts substantially different from the case at bar.

It is a well recognized principle that any pronouncement of the court must be considered in the light of the facts under consideration. It therefore follows when we examine cases deficient in facts as compared with the instant case, we must look farther for cases or authorities more nearly in line with the present case.

Most of the cases by great odds deal with forgeries. As a principle of law it is well established that a bank must know the signatures of its customers, and when it pays out money on a forged check it becomes primarily liable to the customer, unless, perchance, the customer was guilty of some negligence through which it induced the payment of the check.

The law is also equally well recognized that where it is the custom of the bank, and known to the customer as in the instant case, for the bank to send out statements at certain intervals, it is the duty of the customer to examine such statements and reconcile the same with their own

books, and if there is a variance report the error within a reasonable time.

On the next step we find some divergence of authorities, some cases holding that where the bank was negligent it can not hold the customer for negligence in failing to reconcile its books with the statements of the bank; other cases holding that regardless of the bank's negligence it may hold the customer for its negligence in failing to reconcile its books with the bank's statement and reporting such discrepancy within a reasonable time.

Still another line of cases holds that regardless of the bank's negligence, the customer will be held liable for negligence in its failure to reconcile its books with the statement and make report of the discrepancy to the bank when and if the bank shows that it has been damaged through such failure. The damage spoken of is generally the bank's inability to recoup the loss from the offending person through the delay and where it would have been able to recoup if the report had been made promptly.

We also find some cases where an employee of the customer having charge of the reconciling of the statements with the books of the employer and knows from the statement of the error, that the principal is bound by the failure of the dishonest employee to make disclosures. The legal principle is stated that the customer is bound to know that which an honest employee would have ascertained in his reconcilement.

The case nearest in point to the instant case and which covers numerous principles above announced, is that of Frederic A. Potts & Co. v Lafayette National Bank of Brooklyn, N. Y., 269 N. Y. 181 (199 N. E. 50). A reading of the entire case will be found very interesting and instructive. A statement made by the trial court as shown on the last page, and also in Syllabus 7, presents an additional reason for the court's holding, but Syllabi 1, 2, 3, 4, 5 and 6, as well as the remainder of the opinion, disclose a similar finding, notwithstanding the added facts under No. 7. Since the syllabus presents the factual questions and legal determination so completely, we copy them in their entirety:

"1. Banks receiving depositor's check and collecting proceeds had positive duty to see that they were placed in depositor's account, and was liable for acts of its employees in placing moneys in account of dishonest agent of depositor, notwithstanding employees in so doing had been deceived by dishonest officer of bank.

"2. Bank depositor has duty to examine statements rendered him by bank and to give notice of errors therein.

"3. That depositor had intrusted performance of its duty, to examine statements rendered it by bank and to give notice of errors therein, to dishonest employee who was diverting proceeds of depositor's checks, held not to excuse depositor's failure to notify bank of errors in account, since depositor was chargeable with knowledge that it had indorsed certain checks to order of bank and with information which examination of statements by honest employee would have disclosed.

"4. Purpose of depositor's examination of statements rendered it by bank is to verify correctness of debits and credits shown in statements, and not to determine whether statements correctly show entries on books of account of bank, and acquiescence in account with full knowledge of the facts makes out an "account stated."

**260**

"5. Where failure of depositor to object to statements rendered it by bank was due solely to negligence or wrong of depositor's agent, depositor was liable to bank for damages thereby caused bank.

"6. Where depositor's failure to give notice of error in statements rendered it by bank enabled dishonest employee of depositor with cooperation of dishonest employee of bank to continue his diversion of depositor's funds and prevented bank from claiming indemnity from surety company which was then solvent, damages sustained by bank for which depositor was liable held to be the amount of diversions of proceeds of depositor's funds.

"7. That president of corporate depositor, upon discovering that its employee had been misappropriating proceeds of checks deposited by corporation to its bank account, had failed to notify bank in order to protect his private interests and in disregard of depositor's interests, held not to relieve depositor of effect of failure to notify bank, since depositor was charged with knowledge of president."

If the above-entitled case be accepted as good law, it would be determinative of the instant case. This reported case emphasizes the effect of a customer's failure to examine statements and make report of errors within reasonable time, whereby the bank is prevented from protecting itself and avoiding damages.

In the case of Atlanta and St. A. B. Ry. Co. v Barnes, et al., Federal Reporter 95, Second Series, page 273, syllabus 7, reads as follows:

"As respects· liability for negligence of bank in paying out trust funds deposited by trustee in trustee's individual account, contribu-

tory negligence of party injured thereby defeats liability at common law and in Florida."

General Cigar Company, Inc., v First National Bank of Portland, 290 Federal Reporter, page 143, the second syllabus reads as follows:

"In an action against a bank for wrongful and unauthorized payment of checks to plaintiff's agent, who misappropriated the proceeds, where an examination of the monthly statements furnished by the bank and the canceled checks returned therewith would have disclosed the fact that certain items were not accounted for and have led to discovery of the misappropriation, plaintiff was chargeable as matter of law with notice of its agent's defalcation, which consisted in the misappropriation of such items, and plaintiff's failure to object or notify defendant bank for months thereafter, was a complete bar to plaintiff's recovery."

National Production Co. v Guardian National Bank of Commerce of Detroit, et al., 274 N. W., 774, syllabus 2 reads as follows:

"A company, the manager of which in 1928 and 1929 wrongfully indorsed and cashed certain company checks at bank and misappropriated the proceeds, but which failed to notify the bank of the misappropriation until 1932 although discovery thereof was made in 1930, was estopped to recover from the bank by reason of its failure to give notice of manager's alleged wrongdoing to bank within a reasonable time after it was known. notwithstanding bank was negligent."

National Surety Company v President and Directors of Man-

hattan Company, 169 N. E. 372, is a decision by the Court of Appeals of New York, and stresses the principle that the bank must show damages by reason of failure of customer to reconcile his account with statements and make report of errors.

In the case of Glassell Development Co. v Citizens National Bank of Los Angeles, 216 Pacific, 1012, the Supreme Court of California, in Syllabus 6, makes the following pronouncement :

"The negligence of a depositor in failing to examine his monthly statement and report error therein can not affect a bank's liability to make good to him the amount of the first forged check, since such negligence contributed in no manner to its payment, unless the bank makes affirmative showing of prejudice as the result of such failure to examine and report."

This case again stresses the obligation of bank to show damages before customer's claim can be defeated.

In the case of England National Bank v United States, 282 Federal Reporter, page 121, Syllabus 5 reads as follows:

"A failure of depositor to examine his statements and canceled checks and notify bank of any error in his account, or defective checks, within a reasonable time after receiving them, is conclusive admission of the account's correctness."

In the case of Critten v Chemical National Bank, 63 N. E., 969, Syllabus 3 reads as follows:

"Where a depositor neglects to verify vouchers returned to him by the bank with his record thereof, or fails to discover and notify the

bank of forgeries, he does not thereby estop himself from claiming that they are forgeries, but his liability is limited to the damages caused thereby to the bank."

In the case of Erickson Co. v Iowa National Bank, 211 Iowa, 495, (230 N. W. 342) the Supreme Court of Iowa makes the following pronouncement:

"And the court while conceding the general rule that the principal is not chargeable with knowledge of his agent's dishonest act that is adverse to his interest, held that he is nevertheless chargeable with knowledge of such facts as an honest agent would acquire in performing his duty in examining the statements, and further said: While it is true in such a case that the principal is not affirmatively charged with the wrongdoing of his hostile agent, it is nevertheless chargeable with its own duty, which it had mistakenly delegated to the hostile agent. It may not rely upon the default of its false agent as an excuse for its own failure to perform the duty. The failure of performance of duty is chargeable to the principal, through whatever agency the failure results."

The same principle is announced in the case of Whitney Trust and Savings Bank v Jurgens-Fowler Co., 156 Southern, 460.

Another interesting case on the identical question is Deer Island Fish and Oyster Co. v First National Bank (Miss.), 146 Southern, 116.

In the case of Brown v Bank, 170 Michigan, 416, the following appears:

"If the plaintiff knew, or her agent had knowledge imputable to her, and defendant's opportunity to recover on the purported instru-

ment was lost through failure to give notice, she is estopped from asserting the forgery."

We next come to the case of Leather Manufacturers' National Bank v Morgan, 117 U. S. 96. This case has commanded our careful consideration for the reason that we are advised that the trial court relied largely on the pronouncements made therein. In the briefs submitted, both sides find consolation in the decision and give lengthy excerpts from the opinion. The particular language of the opinion referred to by counsel for plaintiff is found on page 113, and reads as follows:

"Of course, if the defendant's officers, before paying the altered checks, could by proper care and skill have detected the forgeries, then it can not receive a credit for the amount of those checks, even if the depositor omitted all examination of his account."

Counsel for appellant quotes from the opinion as follows:

"An inquiry as to the damages in money actually sustained by the bank by reason of the neglect of the depositor to give notice of the forgery, might be proper if this were an action by it to recover damages for a violation of his duty."

The above quoted two excerpts from the opinion are apparently not in harmony but can be reconciled by ascertaining the real issue involved in the case. The customer was bringing action against the bank because it had paid a forged or altered check. Apparently the action in no sense was based on any claim of negligence on the part of the bank, but rather on the very broad ground that under the contractual relation existing between the bank and customer the deposit may not be paid out except to the customer or on his order. The bank was interposing, among other defenses, the defense that the customer was negligent in not examining and reconciling his statements, and thereafter should not be permitted to recover. In presenting this defense the bank did not include therein the claim of damages arising through its inability to recoup its losses from the wrongdoer.

The plaintiff's claim covered a number of checks extending over a period of time. The bank's defenses not only asserted lack of negligence on its part, but also through the sum total of its allegations raised the question of negligence on the part of the customer as to the general method of conducting its business so far as it related to the issuing of checks. Included among these allegations was the claim that had the customer exercised diligence in examining the bank's statements he would have ascertained that checks were being raised by his employee, and upon notice to the bank this improper conduct upon the part of the customer's employee would have been terminated and the additional checks would not have been paid by the bank.

It thus appears that the quoted excerpts from the opinion presented in the briefs were both purely dictum, and not essential to the determination of the issues.

In the trial court, finding and judgment were entered for the depositor. The Supreme Court reversed and remanded for new trial. Syllabi 1, 2 and 3 read as follows:

"1. When a bank depositor sends his pass book to the bank to be written up, it is his duty upon its return, either in person or by

duly authorized agent, to examine the account and vouchers returned within a reasonable time and give to the bank timely notice of any objections thereto. If he fails so to do, he may be estopped from questioning the conclusiveness of the account.

"2. If the examination is made by an agent, it must be done in good faith and with ordinary diligence; and where such agent himself commits forgeries which mislead the bank and injure the depositor, the latter is not protected, in the absence of at least reasonable diligence in supervising the conduct of the agent.

"3. In this case it was error to direct a verdict for the plaintiffs, as the questions: whether the depositor is estopped, whether the bank exercised due caution before paying the altered checks and whether a certain check was indorsed in blank or for deposit, are for the jury."

We have also examined the following cases, wherein very strong statements are made favorable to plaintiff's contention. However, we find that in none of these cases was the issue raised by the bank that it had been damaged by reason of the customer's failure to examine statements and report errors:

First National Bank of Philadelphia v Farrell, 272 Federal, page 371, the first syllabus reading as follows:

"A depositor must examine the bank's periodical statements, and report to the bank without unreasonable delay any errors he may discover, or the bank may regard his silence as an admission that the entries as shown are correct."

In this reported case an employee of the customer had been given power of attorney to check against the funds in the bank to an amount not to exceed $1000.00 at any one time. The employee issued separate checks in excess of $1000.00, which the bank honored contrary to the express instructions under the power of attorney. It was determined by the court that the failure of the depositor to examine the bank's statements and report errors did not constitute a defense. As heretofore stated, the bank did not present the defense that the failure of the customer to report errors in the account had worked to its prejudice. On page 376, the judge rendering the opinion apparently recognized the rule when he says:

"Without weakening this general rule, other principles come into operation according as circumstances vary its application and according also as it responds to the test whether the failure of a depositor promptly to examine the bank's statements and apprise it of discovered errors has misled the bank to its prejudice."

In the case of Sommer, et al., v Bank of Italy National Savings and Trust Association, 293 Pacific, 798, a decision by the District Court of Appeals of California, Syllabus 6 reads as follows:

"Bank's suit for money paid on forged checks can avail itself of depositor's neglect only where free from negligence."

In this reported case the depositor sought to recover from the bank by reason of honoring employee's forged checks against the depositor's account. The bank had regularly issued statements to the plaintiff depositor. In the opinion it is stated that the defendant placed reliance upon the alleged

ratification of the forgery by plaintiff.

Apparently no averment was made by the defendant that it had been damaged through failure of depositor to promptly report errors and so forth. On page 101 of the opinion it is apparently recognized that under proper allegations the bank may prevent recovery. We quote from the opinion as follows:

"And the weight of authority and perhaps of reason, supports the view that when depositor's pass book has been written up and returned to him with canceled checks which have been charged to his account, it is his duty to examine such checks within a reasonable time, and if they disclose forgeries or alterations to report them to the bank, failing in which he can not, if his failure results in detriment to the bank, dispute the correctness of payments thereafter made by it on similar checks."

We are also referred to the case of Wussaw v Badger State Bank of Milwaukee, 234 N. W. 720, a decision by the Supreme Court of Wisconsin. Syllabus 6 reads as follows:

"Where depositor fails to detect and notify bank of forgeries, discoverable from returned checks and statements, bank is exempt from liability only if not itself negligent."

This is a very strong case in favor of plaintiff's contention, but it is proper to observe that the defendant did not introduce the defense of damages arising through failure of depositor to examine statements and make report within reasonable time.

We have examined numerous other cases and citations, but we do not think it essential to make further comment. We have arrived at the conclusion that all the cases may be reconciled when considered in the light of the issues raised under the pleadings.

Applying these principles to the instant case, we are constrained to the view that the trial court was in error in directing a verdict. In our judgment the controlling principles of law are correctly set forth in the syllabus of Potts & Co. v Lafayette National Bank of Brooklyn, N. Y., 199 N. E. page 50. The cases generally, as we believe without exception, hold that a duty rests upon a depositor to examine and reconcile the statements furnished by the bank and make report within a reasonable time of all errors therein. This principle is founded upon a rule of reason which recognizes that banks with a great number of employees are almost sure now and then to make errors.

Fundamentally it would not be fair to place upon the bank the exclusive responsibility of transacting its business with its customers free from error and not place any responsibility on the depositor at all. The principle is sound that a bank is primarily liable and continuously liable for its errors until such time as the depositor has the opportunity in the exercise of sound business methods to detect the error and report it.

The fulfillment of such duty on the part of the depositor is the vehicle through which errors may be promptly caught and corrected. The rule which places liability on the customer when he entrusts the duty of reconcilement to a dishonest employee may seem harsh, but the courts universally, and we think without exception, place this responsibility upon the depositor.

We have already passed on assignments of error Nos. 2 and 3. In assignment No. 4 complaint is made that the trial court was in error in sustaining objections to certain questions asked by counsel for defendant during his cross-examination of some of the officers of the plaintiff bank.

Counsel for appellant claim the purpose of this inquiry was to develop that the defaulting employee had absconded, leaving large debts to the company by reason of other defalcations, and all as supporting defendant's defense that the bank could not recoup its loss from the wrongdoer. So far as the inquiry was made of the witnesses not officers of the plaintiff bank, there would be no prejudicial error since counsel did not make proffer of proof. This rule as to proffer does not apply when witnesses are being cross-examined. While not free from doubt, we are inclined to think that the latitude of cross-examination should have permitted the inquiry of the officers of the plaintiff bank.

The judgment of the trial court will be set aside and the cause remanded for new trial.

Costs in this court will be adjudged against appellee.

GEIGER, PJ., and HORNBECK, J., concur.

I concur in the reversal of this judgment with considerable doubt because of the 7th proposition of the syllabus in Huggins v Commercial & Savings Bank, (S. C.) 140 S. E. 177, and other cases sustaining the principle there announced.

HORNBECK, J.